**Rudolph GERDES, Plaintiff–Appellant,**

v.

**ESTATE OF Maynard CUSH, et al., Defendants–Appellees.**

**No. 90–3586.**

United States Court of Appeals,
Fifth Circuit.

Feb. 11, 1992.

Dennis R. Whalen, Patrick F. McGrew, Baton Rouge, La., for Rudolph Gerdes.

Donald S. Zuber, Seale, Smith & Phelps, Baton Rouge, La., for Estate of Maynard E. Cush and Anne Fiske.

J. Walter Ward, Jr., Christovich & Kearney, New Orleans, La., for National Union.

Before DAVIS and BARKSDALE, Circuit Judges, and MENTZ, District Judge.[1]

PER CURIAM.

This appeal is taken from the district court's judgment dismissing appellant's claims on the basis of prescription. The primary issue is the applicable statute of limitations for claims based on negligent actions of an attorney serving as a mandatary under Louisiana law. Appellant also raises issues regarding insurance coverage. Because we AFFIRM the district court on the prescription issue, we do not reach the insurance issues.

## I.

This case stems from the "Deal of the Century"—a deal that definitely turned out to be too good to be true. Rudolph Gerdes, a Dutch citizen residing in Belgium, was the sole owner of all stock in ALCARU Investments (ALCARU), a corporation which owned the Rodeway Inn in Baton Rouge, Louisiana. Most of Gerdes' investments in the United States, including the investment in the Rodeway Inn, were found for him by his good friend and non-licensed real estate broker, Aloysius (Al) Klijn. Maynard Cush, an attorney and friend of both Klijn and Gerdes, provided the legal work related to Gerdes' investments.

In 1982, Gerdes decided to sell his ownership in the Rodeway Inn by selling all the ALCARU stock. Gerdes was asking for $1.5 million cash, and to have the new owner assume two wrap-around mortgages. Mr. Klijn found a potential purchaser named Jack Martin. Martin offered to assume the mortgages and pay $1.358 million with a note paying 17.5% interest secured by a mortgage on an Oklahoma gravel pit. Martin told Klijn that the gravel pit was operational and made about $34,000 per month.

While Gerdes was out of the country, Cush, Klijn, and Martin put together the deal selling the ALCARU stock to Martin. Gerdes had two procurations, or powers of attorney, drafted: one authorized Cush, as Gerdes' mandatary, to sell all the ALCARU stock for $1.5 million cash and assumption of the wrap-around mortgages; the second authorized Cush, as Gerdes' mandatary, to sell the ALCARU stock for a secured note in the amount of $1.358 million and as-

---

[1]. District Judge of the Eastern District of Louisiana sitting by designation.

sumption of the wrap-around mortgages.[2] The sale occurred on November 29 and 30, 1982, at a time when Gerdes was outside the United States, and Cush signed all documents on Gerdes' behalf. Martin made monthly payments to Cush, Gerdes' escrow agent, but after a few months, the payments ceased.

Neither Cush, Klijn, nor Gerdes became aware of the extent of the problems with the transaction until they learned that Jack Martin was arrested in Oklahoma. Martin had attempted to hire a hit man to kill Gerdes, Cush, Al Klijn, Klijn's wife Carolyn, Cush's secretary Pam Nesbitt, and Larry Butler, an attorney associated with Cush. Martin was subsequently convicted for solicitation for murder. In addition, an investigation ordered by Al Klijn revealed that the "gravel pit" which secured Martin's note was not an operating gravel pit and was essentially worthless. Gerdes eventually foreclosed on the hotel and on the gravel pit.

Gerdes alleges that during a telephone conference about ten days prior to the closing on the sale of the ALCARU stock, he instructed Cush to obtain information on Martin's creditworthiness and to inspect the gravel pit. The telephone conference took place in Cush's office, and was attended by Cush, the Klijns, and Pam Nesbitt.

Neither Cush nor Klijn inspected the property. Prior to the sale, however, Martin provided Cush and Klijn with photographs of an operating gravel pit.[3] These pictures were sent to Gerdes in Belgium.

At trial, Gerdes' allegation was supported by his own testimony and the testimony of Pam Nesbitt. The Klijns denied that Cush was ever instructed to inspect the gravel pit. Also, by letter to his insurance company regarding the possibility of a malpractice claim being made by Gerdes, Cush represented that he provided legal services only, that he took no part in the negotiations leading up to the sale, and that he was never asked to obtain an appraisal of or to inspect the pit in Oklahoma. Exhibit P 39.

Maynard Cush died in January, 1985. On May 7, 1985, Gerdes filed suit against the Estate of Cush, Ann Fiske, the administratrix of the estate, Al and Carolyn Klijn, New England Life Insurance Company and Hartford Insurance Company. A subsequent amended complaint dismissed New England Life Insurance Company and Hartford Insurance Company and added National Union Fire Insurance Company. Gerdes brought claims alleging legal malpractice by Cush, and breaches of fiduciary duty by Cush and the Klijns. Gerdes' legal malpractice claims against Cush were dis-

---

2. The procurations, or powers of attorney, provide the following:

R.J.B. GERDES ... does by these presents name, constitute and appoint, MAYNARD E. CUSH, ... to be his true and lawful agent and attorney in fact, to execute for him in his name, place, and stead all instruments necessary to contract for the sale of the RODEWAY INN, motel, restaurant, lounge, etc., in Baton Rouge, Louisiana. Said sale to be made by selling of the stock of ALCARU, INC., a Louisiana corporation which owns the described property. The said R.J.B. GERDES, is the sole and only stockholder of said corporation.

The terms of any contract entered into shall be substantially as follows: ...

[the procurations differ only with respect to the terms of the contract which Cush becomes authorized to execute—one allows him to sell all the ALCARU stock for $1.5 million cash and the wrap-around mortgages; the other allows him to sell the ALCARU stock for a secured note in the amount of $1.358 million and the wrap-around mortgages.] ...

And the said appearer, R.J.B. GERDES, does hereby give and grant unto his said agent, full and complete power and authority to make such changes, alterations or amendments in any instrument as he, the said agent in his sole and uncontrolled discretion, deem necessary and proper, to sign any and all ancillary agreements, documents, receipts or instruments that he, the said agent, may deem and believe necessary and proper in connection with the said transaction, and finally, to do and perform every act in connection with the said transactions, and finally, to do and perform every act in connection with the proposed transactions substantially as hereinabove set forth to the same extent and in the same manner, as the said appearer could do if personally present, and said appearer hereby ratifying, approving and confirming each and every act done by the said agent.

Exhibits 8 & 9.

3. Martin also provided a copy of the mortgage on the gravel pit. It was later discovered that the document had been altered.

missed prior to trial on the basis of prescription.

After a non-jury trial on the breach of fiduciary duty and insurance coverage claims, the district court issued an order on July 18, 1988 stating that it would dismiss Gerdes' claims, but withheld entry of final judgment until the court issued its findings of fact and conclusions of law. (Written findings of fact and conclusions of law were never issued.) Upon motion of Gerdes, the court reopened testimony in the case because Carolyn Klijn (now Carolyn Fulton) wished to change her testimony. At trial she testified that Gerdes did not instruct Cush to inspect the gravel pit; her revised testimony was that Gerdes instructed Cush, and Cush agreed to inspect the gravel pit. On July 2, 1990, after Klijn–Fulton testified, the district court orally rendered judgment in favor of all defendants finding that the basis of Gerdes' claims was legal malpractice,[4] and these claims had prescribed. The district court also found that regardless of whether Cush was an attorney or mandatary, there had been no evidence of disloyalty or self-dealing by Cush, thus the action was governed by the one year statute of limitations for negligence actions and had prescribed. Judgment was entered on July 5, 1990 dismissing all of Gerdes' claims.

II.

At issue is whether an action against an attorney who acts pursuant to a mandate is governed by Louisiana's one year prescriptive period for attorney malpractice, the ten year prescriptive period for breach of fiduciary duty, or the one year prescriptive period for delictual actions. Gerdes contends that as part of Cush's mandate, Cush was required to check Martin's creditworthiness and inspect the "gravel pit" in Oklahoma; Gerdes also contends that Cush's failure to do so was a breach of fiduciary duty subject to a ten year prescriptive period.[5] Appellant does not dispute that any claim for legal malpractice against Cush is barred by prescription.

Article 2985 of the Louisiana Civil Code provides:

A mandate, procuration, or letter of attorney is an act by which one person gives power to another to transact for him and in his name, one or several affairs.

Under Louisiana law, the relationship of mandate has become equated with the common law principal-agent relationship. Yiannopoulos, Brokerage, Mandate, and Agency in Louisiana: Civilian Tradition and Modern Practice, 19 LA.L.REV. 777, 795 (1959). A mandatary may be responsible to the principal for damages resulting from non-performance of his duty, unfaithfulness, fault or neglect.[6]

An action for breach of fiduciary duty is a personal action with a ten year prescriptive period. La.Civ.Code art. 3499. A fiduciary relationship has been described as follows:

The dominant characteristic of a fiduciary relationship is the confidence reposed by one in the other and [a person] occupying such a relationship can not further his own interests and enjoy the fruits of an advantage taken of such relationship. He must make a full disclosure of all material facts surrounding the transac-

---

4. Judge Polozola noted the following in his oral reasons for judgment:

Even assuming that Mr. Gerdes may have instructed Mr. Cush to go out and inspect that property, I don't think that changes the decision.... It just shows that maybe he was more negligent, but it doesn't create any fiduciary relationship of any kind other than that between attorney and client.

Record on Appeal, vol. 10 p. 104.

5. Appellant also alleges that Al Klijn was made substitute mandatary by Cush and that he too breached the duty owed Gerdes pursuant to the mandate. The claim against Klijn would be governed by the same statute of limitations as the claim against Cush.

6. The attorney in fact is bound to discharge the functions of the procuration, as long as he continues to hold it, and is responsible to his principal for the damages that may result from the non-performance of his duty.

La.Civ.Code Art. 3002.

The attorney is responsible, not only for his unfaithfulness in his management, but also for his fault or neglect.

La.Civ.Code art. 3003.

tion that might affect the decision of his principals.

*Plaquemines Parish Commission Council v. Delta Development Co.*, 502 So.2d 1034, 1040 (La.1987) (quoting *Anderson v. Thacher*, 76 Cal.App.2d 50, 172 P.2d 533, 543 (1946)). The duty of loyalty which results from the position of trust distinguishes the fiduciary relationship. A cause of action for breach of fiduciary duty requires proof of fraud, breach of trust, or an action outside the limits of the fiduciary's authority. *Crabtree Investments, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 577 F.Supp. 1466 (M.D.La.1984), aff'd without opinion, *Crabtree Investments v. Merrill Lynch*, 738 F.2d 434 (5th Cir.1984).

■ While a mandatary is a fiduciary, it does not necessarily follow that every action against a mandatary is subject to the ten year prescriptive period. For example, because lawyers appear in a representative capacity, a general contract between an attorney and client is often considered a mandate under Louisiana law. *Board of Commissioners v. Commission on Ethics for Public Employees*, 457 So.2d 802 (La.App. 1st Cir.1984); *see Louque v. Dejan*, 129 La. 519, 56 So. 427 (1911); *Gurley v. New Orleans*, 41 La.Ann. 75, 5 So. 659 (1889); *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102, 106–108 (La.1978) (Tate, J., dissenting). The prescriptive period for claims of legal malpractice (i.e. negligence of the attorney/mandatary) is one year. • *Braud v. New England Insurance Co.*, 576 So.2d 466 (La.1991). Where the attorney has breached the fiduciary duty to the client by engaging in self-dealing, however, the ten year prescriptive period applies. *Plaquemines Parish*, 502 So.2d 1034.

■ Actions based on negligence of a mandatary under Article 3003 have been equated with ordinary delictual actions under Article 2315 of the Louisiana Civil Code. *Batiste v. Security Insurance Group*, 416 So.2d 279 (La.App. 3d Cir.1982) (negligence of an insurance broker/mandatary). In *Manion v. Pollinque*, 524 So.2d 25 (La.App. 3d Cir.), *cert. denied*, 530 So.2d 572 (La.1988), the court held that "[a]ny tort claims against [the attorney for an estate] or [the administrator of an estate] for breach of fiduciary duty would be classified as delictual actions and as such would have prescribed ... one year after the judgment of possession was signed." *Id.* at 32.[7] The prescriptive period for such delictual actions is one year. La.Civ.Code art. 3492. Thus, the mere *negligent* actions of any mandatary, attorney or non-attorney, are subject to a one year statute of limitations. *See also Jolley v. Welch*, 904 F.2d 988 (5th Cir.1990), *cert. denied Welch v. Jolley*, —— U.S. ——, 111 S.Ct. 762, 112 L.Ed.2d 781 (1991) (breach of fiduciary duty claim against broker alleging only violations of articles 2315–2317 not subject to ten year limitations period).

■ Whether Gerdes' claim arises from Cush's actions (and inaction) as a lawyer or from separate obligations owed pursuant to the mandate, Gerdes' claim fails.[8] In the absence of self-dealing or a breach of the duty of loyalty, negligence by a mandatary is subject to the one year prescriptive period. The district court's findings of fact are not to be reversed unless clearly erroneous. *Amadeo v. Zant*, 486 U.S. 214, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988); Fed.R.Civ. Proc. 52(a). Judge Polozola found as a matter of fact that Cush engaged in no self-dealing or breach of loyalty.

7. The plaintiff alleged that the administrator and the attorney negligently handled her father's succession. 524 So.2d at 29.

8. The district court found that Cush was acting as an attorney. The practice of law is generally defined in La.R.S. 37:212, and includes appearance, document preparation, or other acts in connection with proceedings in court, advising as to legal matters, certifying or giving title opinions, and preparation of acts of sale. 37:212 does not limit the professional services that a lawyer can provide, but merely lists those services which can *only* be provided by a lawyer. Professional services provided by a lawyer have been broadly defined to include "services provided by one in the ordinary course of the practice of [law,] on behalf of another." *Jensen v. Snellings*, 841 F.2d 600 (5th Cir.1988). The actions and inactions upon which the appellant's claims are based could easily fall within this broad description of the legal services.

The district court's finding that Gerdes proved nothing more than negligence on the part of Cush is well supported in the record. As the district court noted: "I don't think there is any evidence that Mr. Cush placed his interests above the plaintiff's in this particular case. Maybe he didn't do his job properly, but he didn't put his interest over that of Mr. Gerdes." The fact that Martin tried to have both Cush and Klijn killed suggests that they had nothing to gain (and quite a bit to lose) from failing to do their jobs properly. Thus, we concur with the district court's conclusion that Cush and Klijn engaged in no self-dealing.

### III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.