**FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate Capacity**

v.

**Marvin L. CAPLAN, et al.**

**Civ. A. No. 92–2189.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

Jan. 11, 1995.

See also, 838 F.Supp. 1125.

John A. Broadwell, U.S. Attorney's Office, Shreveport, LA, J. Christopher Kohn, David S. Klontz, Dept. of Justice, Civ. Div., Washington, DC, for F.D.I.C.

Richard L. McGimsey, Steffes & MacMurdo, Baton Rouge, LA, William B. Owens, Crowell & Owens, Alexandria, LA, for Marvin L. Caplan, John F. Marzullo, Charles Trent, Darrel V. Willet, Sr.

Richard L. McGimsey, Steffes & MacMurdo, Baton Rouge, LA, Charles S. Weems, III, Gold Weems Bruser Sues & Rundell, Alexandria, LA, for Claude Davis, Jr., Paul Price.

William H. deLaunay, Jr., H. Brenner Sadler, Stephen D. Wheelis, Provosty Sadler & deLaunay, Alexandria, LA, for Ralph W. Graham, A.A. Kelley, Jr., Randolph A. Monsur.

Charles S. Weems, III, Gold Weems Bruser Sues & Rundell, Alexandria, LA, for Louis Joseph, Jr., Stafford G. Kees Succession, Sr.

Wade N. Kelly, William J. Mize, Mary Louise Fullington, Carmouche Law Firm, Lake Charles, LA, for Ragan K. Nelson.

Richard L. McGimsey, Steffes & MacMurdo, Steven E. Adams, McCollister & McCleary, Baton Rouge, LA, for Curt H. Smith.

Richard L. McGimsey, Steffes & MacMurdo, Baton Rouge, LA, Frederick M. Stoller, McClaskey Langenstein & Stoller, New Orleans, LA, William B. Owens, Crowell & Owens, Alexandria, LA, for Robert B. Tudor, Jr.

Eugene R. Preaus, Kyrstil B. Cook, Preaus Roddy & Krebs, New Orleans, LA, for Fidelity & Deposit Co. of Maryland.

## RULING

LITTLE, District Judge.

This case involves claims brought by the Federal Deposit Insurance Corporation against former directors of First Bank of Pineville, Louisiana, alleging breach of fiduciary duty of care and loyalty. Before this court is the motion of defendant Randolph A. Monsur for a judgment on the pleadings. Defendant Monsur argues that (1) the FDIC's complaints are barred by prescription and (2) the FDIC failed to allege specific facts to support its claims.

### I. Prescription

Monsur's prescription argument has two components. First, he argues that the appropriate prescriptive period for the FDIC's claim is one year rather than the ten year period urged by the FDIC. Second, Monsur urges that under this one year standard, the FDIC's action has prescribed.

### A.

Actions brought by the FDIC must comply with the statute of limitations set forth in FIRREA, 12 U.S.C. § 1821(d)(14)(A)(ii). This section sets the period as the longer of "(I) the 3–year period beginning on the date the claim accrues; or (II) the period applicable under State law." *Id.* Under this statute, if a claim has not prescribed before the FDIC is appointed receiver, the agency will be allowed at least three years in which to file suit. *FDIC v. Dawson,* 4 F.3d 1303, 1306 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2673, 129 L.Ed.2d 809 (1994). In this case, the FDIC was appointed receiver on 8 December 1989, and it filed this lawsuit one day shy of the three year period, on 7 December 1992. Therefore, unless the claim filed by the FDIC had prescribed prior to 8 December 1989 (that is, prior to the FDIC being appointed receiver), the agency's claim will not be time-barred.

■ In order to determine whether the claim has prescribed prior to the FDIC's entrance here, we must examine Louisiana's

prescriptive periods. Monsur argues that, in the absence of fraud or self-dealing, an action against a fiduciary for breach of the duty of care is merely a claim for negligence. As such, this breach of the duty of care claim is a delictual action under Louisiana law and subject to a one year prescriptive period. La.Civ.Code Ann. art. 3492 (West 1994). The FDIC disputes this analysis and argues that a claim for breach of any fiduciary duty is a personal action and therefore subject to a ten year prescriptive period. La.Civ.Code Ann. art. 3499 (West 1994).

Monsur does not claim that the FDIC's claim for breach of the fiduciary duty of loyalty is a personal action. (Monsur mem. at 21 n. 18). He concedes that for the breach of the duty of loyalty claim, a ten year period would be appropriate. (*Id.*) According to Monsur, a duty of loyalty claim is based on the breach of his "fiduciary duty." (*Id.*) This is distinguished from the duty of care claim, which Monsur asserts is merely a claim for negligence. (Monsur mem. at 6).

Monsur's casting of the breach of the fiduciary duty of care as a claim for simple negligence is simply not supported by the caselaw or the facts of this case. In his argument that a breach of the fiduciary duty of care is the equivalent of a mere negligence claim, Monsur relies primarily on *Gerdes v. Estate of Cush,* 953 F.2d 201 (5th Cir.1992). *Gerdes* held that the mere existence of a fiduciary relationship did not require that all claims against the fiduciary are subject to the ten year prescriptive period. *Id.* at 205. Rather, the underlying claim determines the prescriptive period. *Id. See also Jolley v. Welch,* 904 F.2d 988, 995 (5th Cir.1990), *cert. denied,* 498 U.S. 1050, 111 S.Ct. 762, 112 L.Ed.2d 781 (1991) (stating that the character of the pleadings governs the prescriptive period).

In *Gerdes,* the court held that absent self-dealing, a claim of legal malpractice is a claim for negligence and subject to the one year period for delictual actions. 953 F.2d at 205. This holding does not, as Monsur asserts, require that fraud or self-dealing is *necessary* in order to convert a claim against a fiduciary for a breach of care from a delictual claim into a personal claim. Rather, the case establishes that fraud or self-dealing *can* convert a negligence claim against a fiduciary into a personal claim. *Id. Gerdes* does not provide that all breach of fiduciary duty of care claims lacking fraud or self-dealing are delictual negligence cases.

Turning to Louisiana law for guidance, we hold that the ten year prescriptive period is the appropriate standard for this case. The law is well settled that a suit for breach of fiduciary duties (as opposed to a suit against a fiduciary for negligence, for example) is a personal action and subject to a ten year prescriptive period. *Mary v. Lupin Found.,* 609 So.2d 184 (La.1992); *Levy v. Billeaud,* 443 So.2d 539 (La.1983); *Dawkins v. Mitchell,* 149 La. 1038, 90 So. 396, 399 (1922). Plaintiff has offered neither facts nor case authority that would support the conclusion that the duty of care required of a board member in a fiduciary relationship with a bank is so akin to the duty of ordinary care required in ordinary negligence claims that this lawsuit should be considered delictual.

■ The essence of the fiduciary duty lies in the special relationship between the parties. The fiduciary's duty of course includes the ordinary duties owed under tort principles. In addition, however, the law imposes greater obligations upon the fiduciary. As the Louisiana Supreme Court stated, the "fiduciary must handle the matter as though it were his own affair." *Noe v. Roussel,* 310 So.2d 806, 818 (La.1975). In addition, the "fiduciary may not take even the slightest advantage, but must zealously, diligently and honestly guard and champion the rights of his principal against all other persons whomsoever, and is bound not to act in antagonism, opposition or conflict with the interest of principal to even the slightest extent." *Id.* at 819. Thus, contrary to Monsur's assertion, a claim for breach of fiduciary duty of care involves more than the duty of ordinary care. The claim requires an examination of the responsibilities of the fiduciary to the particular plaintiff. Accordingly, this claim easily qualifies as a personal action, and it is therefore subject to the ten year prescriptive period presented in La.Civ. Code Ann. 3499 (West 1994).

## B.

■ Even assuming that Monsur were correct in his claim that the one year period for delictual actions is appropriate here, his prescription argument would nevertheless fail due to suspension of prescription through the doctrine of *contra non valentem*. Monsur argues that because the bank did not file any action against him within one year of his resignation from the board of directors, any delictual claim against him had prescribed before the FDIC assumed receivership of First Bank. Thus, Monsur ·asserts that the FDIC has no standing to bring its action against Monsur. The FDIC responds that prescription was suspended during the period when the defendants formed a majority of the bank's board of directors.

■ The FDIC's argument that the prescription was suspended during the period when the defendants formed a majority of the bank's board of directors is a theory known in many jurisdictions as adverse domination. *See, e.g., FDIC v. Dawson*, 4 F.3d 1303, 1308 (5th Cir.1994) (applying Texas law). The doctrine of adverse domination has long been a part of federal common law, and it acts to preserve claims that would otherwise have been time-barred. The doctrine tolls the running of a statute of limitations during periods when the named defendants formed a majority of an institution's board of directors. *Id.* at 1310. This theory is based on the recognition that the institution can act only through its board of directors, and a defendant-controlled board is unlikely to authorize a suit against its individual members. *Id.* Thus, the doctrine preserves the viability of cases against the board members until the alleged malefactors were no longer in control of the board.

As yet, Louisiana courts have not formally recognized the doctrine of adverse domination. This fact does not end the analysis, however. As with many other areas of Louisiana law, labels and titles applied to doctrines in other jurisdictions might have a corollary in Louisiana under a different name.[1] Thus, we must inquire whether Lou-

isiana provides any functional equivalent of the doctrine of adverse domination.

■ Louisiana law provides that liberative prescription runs against all persons unless an exception is established by legislation. La.Civ.Code Ann. art. 3467 (West 1994). Nevertheless, Louisiana jurisprudence recognizes an exception based on the ancient civilian doctrine of *contra non valentem agere nulla currit*, which means that prescription does not run against a party unable to act. *Wimberly v. Gatch*, 635 So.2d 206, 211 (La. 1994); *Corsey v. State Bd. of Corrections*, 375 So.2d 1319, 1321 (La.1979). This doctrine, probably founded on the principles of equity, justice, fairness, or even natural law suspends the running of prescription when the "plaintiff was effectually prevented from enforcing his rights for reasons external to his own will." *Wimberly*, 635 So.2d at 211. Prescription recommences when the period of suspension expires. La.Civ.Code Ann. art. 3472 (West 1994). That is, prescription resumes when the plaintiff is no longer prevented from enforcing his rights.

■ Under *contra non valentem*, four fact situations will trigger suspension of prescription. The first three fact situations were articulated over a century ago in *Reynolds v. Batson*, 11 La.Ann. 729, 730 (1856): ·

(1) where there was some cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action ...

(2) where there was some condition or matter coupled with the contract or connected with the proceeding which prevented the. creditor from suing or acting ·...

(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action ...

The fourth *contra non valentem* fact situation, known as the "discovery rule," was explicitly added to the doctrine in the 1979 case, *Corsey v. State Department of Correc-*

---

1. "A rose by any other name would smell as sweet." William Shakespeare, *Romeo and Juliet*, Act II, scene ii.

*tions,* 375 So.2d at 1322. The discovery rule tolls prescription "where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." *Id.*

Although Louisiana courts have not explicitly recognized the doctrine of adverse domination, it is possible that the seemingly equitable doctrine of *contra non valentem* would reach the same result. Thus it is necessary to inquire whether any of the *contra non valentem* categories apply to this case. Therefore, we will examine each *contra non valentem* fact situation in turn and measure it against the facts presented by this case.

■ The first category, "where there was some cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action" is easily eliminated. *See Reynolds,* 11 La.Ann. at 730. This category was designed to preserve an action when the plaintiff cannot gain access to the courts. For example, in *Quierry's Executor v. Faussier's Executor,* the first category of *contra non valentem* suspended prescription when the court was closed during wartime conditions. 4 Mart. 609 (La. 1871). Nothing in the facts of this case suggests that access to the courts prevented the plaintiffs from filing during the statutory period. Thus the first category of *contra non valentem* cannot apply to this case.

■ The fourth category, "where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant" can also be easily eliminated. *See Corsey,* 375 So.2d at 1322. The classic example of this fact pattern involves allegations of medical malpractice for incorrect diagnoses.[2] Here, the bank, through its board of directors, was certainly aware of the conduct of the individual board members in their official capacities. The fact that the board did not act during the period does not alter the date of discovery. Accordingly, this *contra non valentem* option cannot apply.

The plaintiff is not without protection, however. The remaining categories of *contra non valentem* hold more promise for this plaintiff. The second prong of *contra non valentem* suspends prescription "where there was some condition or matter coupled with the contract or connected with the proceeding which prevented the creditor from suing or acting." *Reynolds,* 11 La.Ann. at 730. The second fact category applies when there is some outside fact other than the defendant's own action or the plaintiff's inaction that prevents the plaintiff from asserting its rights.

Louisiana courts have recognized a plethora of conditions that would trigger the application of the second *contra non valentem* category. For example, in *Dalton v. Plumbers & Steamfitters Local Union No. 60,* the second category of *contra non valentem* acted to save a claim for wrongful termination when the workers' union regulations required the exhaustion of all union appeals before filing suit. 240 La. 246, 122 So.2d 88, 89 (1960). Had the claimant complied with the prefiling time constraints of the union plan, the state prescriptive period would have run before he had an opportunity to file. *Id.* The court held that the union regulations qualified as the condition that would suspend prescription. *Id.*

In *Held v. State Farm Insurance Co.,* the second category of *contra non valentem* was applied to preserve a daughter's suit against her sexually abusive father. 610 So.2d 1017, 1020 (La.Ct.App. 3rd Cir.1992), *writ denied,* 613 So.2d 975 (La.1993). The Louisiana court held that the daughter's "post traumatic stress disorder prevented her from acting until she knew she was completely innocent and her father was solely responsible." *Id.* Thus the disorder qualified as the necessary condition.

In *L & M Hair Care Products, Inc. v. State of Louisiana,* the Louisiana court applied the second *contra non valentem* category to save an expropriation case brought by two individuals for severance damages to cor-

---

**2.** The fourth category of *contra non valentem* no longer applies to medical malpractice actions. In *Chaney v. State Department of Health and Human Resources,* the Louisiana Supreme Court held that La.Rev.Stat.Ann. § 9:5628 legislatively overruled the fourth category of contra non valentem's application to medical malpractice actions. 432 So.2d 256, 259 (La.1983).

porate property. 622 So.2d 1194, 1196 (La. Ct.App. 2d Cir.), *writ denied,* 629 So.2d 1126 (La.1993). The corporation, L & M, was wholly owned by the individuals. *Id.* at 1195. The lawsuit did not name L & M as a plaintiff, and the individuals alone lacked standing to sue. *Id.* The court held that even though the corporation was the proper party plaintiff and did not assert its rights against the state until after the running of the prescriptive period, the second *contra non valentem* provision preserved the claim. *Id.* at 1196. The court noted that the state had failed to object to the parties prior to the running of the prescriptive period. In fact, the issue was first raised by the appellate court. Therefore, the court held, "The state's failure [to object to the parties] created a *condition* ... that prevented or made it unnecessary for L & M to assert its cause of action." *Id.* Prescription was suspended until the appellate court noticed that the case had been brought by the improper plaintiff, and only at that time did the prescription resume. *Id.* Therefore, in *L & M,* the critical condition was the State's failure to require joinder of L & M.

These cases illustrate that the condition necessary to trigger the second category of *contra non valentem* is fact intensive, but it provides relief in many situations. We hold that such a condition exists in this case. Here, the bank was able to act only through its board of directors, and the board could act only upon majority vote. Thus, when the alleged wrongdoers formed the majority of the board, the bank was virtually unable to act against the individual defendants, who were bank directors. The condition necessary to trigger the second category of *contra non valentem,* therefore, is the requirement that the bank act only through its board of directors. This situation clearly meets the very purpose of *contra non valentem;* prescription should not run against this bank that was unable to act against its individual board members.

■ Moreover, the third category of *contra non valentem* will suspend prescription. This category suspends prescription "where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action." The Louisiana Supreme Court has interpreted this provision to require evidence of fraud, deceit, misrepresentation, or concealment by the defendant that led to the plaintiff's failure to file the claim within the statutory period. *See Nathan v. Carter,* 372 So.2d 560, 562 (La.1979).

The court has also applied this category when the wrongful act on which the lawsuit is brought itself prevented the plaintiff from asserting his claim. For example, in *Corsey,* the defendant's negligent conduct had incapacitated the plaintiff throughout the prescriptive period so that he was unable to assert his legal rights before prescription. 375 So.2d at 1321. The Louisiana Supreme Court held that the conduct itself of the defendant triggered *contra non valentem* and preserved the plaintiff's claim until the time when he was able to assert his rights. *Id.* at 1323–24. *See also Wimberly v. Gatch,* 635 So.2d at 216 (suspending prescription where defendant's sexual molestation of a child caused psychological trauma that prevented the child from informing his parents).

■ This case presents facts that support an invocation of the third category of *contra non valentem.* The FDIC has alleged that the board repeatedly assured it that corrective measures would be taken to cure defects in the Bank's lending practices. These assurances lulled the regulators into allowing the Bank to remain open, despite troubling ratings. This deceit by a fiduciary easily qualifies as the third category's "act effectually to prevent" the plaintiff from pursuing its rights.

To summarize, the second and third categories of *contra non valentem* apply to suspend prescription for the time period when the defendants controlled the board of directors of the Bank. Thus, the plaintiff's action was timely filed, and the defense of prescription must be denied. We do not hold that adverse domination per se is an element of Louisiana law. Rather, we hold that the Louisiana doctrine of *contra non valentem* applies and produces the same effect here.

We note that other federal courts in Louisiana have held that the doctrine of adverse

domination is subsumed in Louisiana's *contra non valentem*. *See, e.g., Resolution Trust Corp. v. Aycock,* 1993 WL 557683, *1 (E.D.La., Jan. 5, 1994); *FDIC v. Mijalis,* 1991 WL 639754, *1, 1991 U.S.Dist. LEXIS 20726, *2 (W.D.La., October 9, 1991); *RTC v. International Insurance Co.,* 770 F.Supp. 300, 306 (E.D.La.1991). The sole case that has concluded that adverse domination is not addressed by *contra non valentem* is *RTC v. Walke,* CV 92–430 (W.D.La. July 29, 1994). We have studied that opinion and scrutinized the authorities cited in it. We are neither able to write around *Walke* nor adopt its holding. We are intellectually comfortable with our analysis and join those other federal district courts that have ruled on the issue as we have.

## II. Lack of Factual Allegations

Finally, Monsur argues that the FDIC's complaint "does not offer any factual allegations to the effect that Monsur committed fraud, breached his trust, or acted outside the limits of his authority." (Monsur mem. at 22). This claim is without merit. The complaint is replete with specific allegations of breach of fiduciary duties, and we need not recite them here. *See, e.g.,* Compl. at Paragraph 50.

## III. Conclusion

For the foregoing reasons, we hold that the FDIC's claim against Randolph A. Monsur has not prescribed. In addition, we hold that the complaint alleges specific facts on the issue of breach of fiduciary duty. Accordingly, defendant Monsur's motion is DENIED.

We note that defendant Curt H. Smith has filed a motion for judgment on the pleadings wholly adopting the motion of Randolph A. Monsur. Because our reasoning applies equally to Smith, his motion is likewise DENIED.