In re Louis J. PROVENZA, jointly administered with Northshore Neurological Surgery Assoc., a Professional Medical Corporation, Debtors.

Nos. 00–11830, 00–11831.

United States Bankruptcy Court, E.D. Louisiana.

Nov. 17, 2003.

---

Albert J. Derves, IV, The Derbes Law Firm, LLC, Metairie, LLC, for Wilbur J. Babin, Jr., Trustee.

Phillip A Franco, Adams & Reese, New Orleans, LA, for Dr. Gutnisky, Creditor.

## MEMORANDUM OPINION

JERRY A. BROWN, Bankruptcy Judge.

This matter stems from the hearing held on July 18, 2003 on the trustee's objection to claim no. 56 in the amount of

$228,003.88 filed by Gustavo A. Gutnisky, M.D. ("Gutnisky"), and the various responses filed by the parties. The court will sustain the objection to the claim, and disallow and expunge claim no. 56 in its entirety, for the reasons expressed in the following opinion.

## I. Background Facts

Dr. Gutnisky and the debtor Dr. Louis J. Provenza, M.D. ("Debtor" or "Provenza") together with a third doctor, formed Southern Neurosurgical Group, LLC ("SNG") a Louisiana limited liability company on August 13, 1998.[1] Prior to the formation of the LLC, on August 10, 1998, SNG signed a promissory note in the principal amount of $250,000.00 with First National Bank of Commerce (the "1998 Note").[2] Each member of the LLC, including Dr. Gutnisky, signed a commercial guaranty of the note.[3] On July 12, 1999, SNG increased the loan amount to $350,000.00, and a second promissory note, dated January 12, 1999, was signed with Bank One, N.A. for that amount (the "1999 Note").[4] This indebtedness was also guaranteed in solido by SNG's members, including Dr. Gutnisky.[5]

On or about March 11, 2000, Dr. Provenza filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and his corporation, Northshore Neurological Surgery Association, filed for Chapter 11 relief at the same time. Both were later converted to Chapter 7 proceedings. Dr. Gutnisky filed claim no. 56 in the Provenza bankruptcy proceeding in the

amount of $228,003.88. On October 4, 2002, Wilber J. Babin, Jr., Trustee ("Trustee") in the Debtors' consolidated cases filed his third set of objections to claims, including the claim of Dr. Gutnisky. The objection asserts as its basis that:

(1) no supporting documentation is attached to the claim;

(2) the doctrine of contribution is not available, as Dr. Gutnisky has not paid more than his virile share of the indebtedness forming the basis of the claim;

(3) alternatively, should proof of payment of more than Dr. Gutnisky's virile share be provided, the claim should be recognized in that amount only, after the Bank One debt is credited with the payment.

Dr. Gutnisky initially responded to the objection stating that claim no. 56 represents amounts due him by the fraudulent representations made by Dr. Provenza.[6] Dr. Gutnisky also responded that his virile share of the Bank One debt is 13.527% or $30, 940.12, and that he paid over $65,000.00 on the Bank One indebtedness, and is due contribution. Additionally, he states that Dr. Provenza breached his fiduciary duty to the members of SNG by failing to inform them of his financial problems before the members incurred the Bank One indebtedness.[7]

At trial, these arguments were amended. Dr. Gutnisky revised his claim to the

---

1. Negotiations over the terms of the operating agreement and articles of organization were conducted in July, 1998. Exhibit 27 and 28.

2. Exhibit 4.

3. Exhibit 5.

4. Exhibit 6.

5. Exhibit 7.

6. The fraud claim was abandoned prior to trial. If not abandoned, no evidence of fraud was produced at trial, and the fraud claim is denied.

7. Amended Response of Gustavo A. Gutnisky, M.D. to Trustee's Third Set of Objections to Claims, Pleading 973; Pre–Trial Memorandum, Pleading 1099.

amount of $124,242.15, which consists of the $89,493.00 that he has already paid on the Bank One debt, and the unpaid balance of $37,749.15. This entire amount is based upon an alleged breach of fiduciary duty by Dr. Provenza to Dr. Gutnisky.[8]

## II. Applicable Law.

### (A). *The burden of proof.*

▮ Bankruptcy Rule 3001(f) provides that "a proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." A party objecting to a proof of claim has the burden of producing evidence to rebut the claim and overcome the presumption of validity.[9] The objecting party must produce evidence that indicates a dispute and that is "of probative force equal to that of the creditor's proof of claim."[10] If such evidence is produced, the burden of proof will fall on the party that bears that burden outside of bankruptcy.[11]

When a proof of claim is objected to, the Supreme Court has stated that the burden of proof is an essential element of the claim, and is borne by the same party who would bear the burden if the contest took place outside of bankruptcy.[12] The ultimate burden of proof generally rests on the party who would bear it outside of bankruptcy.[13]

▮ Louisiana Rev. Stat. 12:1314(E) provides that:

> A person alleging a breach of the duty of diligence, care, judgment and skill owed by a member or manager under Subsection A has the burden of proving the alleged breach of duty, including the inapplicability of the provisions as to the fulfillment of the duty under Paragraph A(2) and Subsection D, and, in a damage action, the burden of proving that the breach was the legal cause of damage suffered by the limited liability company.

In a nonbankruptcy forum, Dr. Gutnisky would bear the burden of proof on a claim alleging a breach of fiduciary duty.[14] Dr. Gutnisky bears the ultimate burden of proving his claim of breach of fiduciary duty, by a preponderance of the evidence.[15]

▮ Dr. Gutnisky's proof of claim was filed in the amount of $228,003.88. On the date of filing, Bank One was owed $206,696.60 under the 1999 promissory note.[16] The evidence demonstrates that the Trustee, on December 23, 2002, paid $126,765.39, or over one-half of the indebtedness due Bank One.[17] As such, the Trustee has presented sufficient evidence rebutting the validity and amount of the claim and to overcome the *prima facie* validity of the claim.

---

8. Post–Trial Memorandum of Gustavo A. Gutnisky, M.D., Pl. 1132.

9. *In re Fidelity Holding Co.,* 837 F.2d 696, 698 (5th Cir.1988).

10. *In re Simmons,* 765 F.2d 547, 552 (5th Cir.1985).

11. *Raleigh v. Illinois Dept. Of Revenue,* 530 U.S. 15, 120 S.Ct. 1951, 1955, 147 L.Ed.2d 13 (2000).

12. *Raleigh v. Illinois Dept. Of Revenue,* 530 U.S. 15, 120 S.Ct. 1951, 1955, 147 L.Ed.2d 13 (2000).

13. *Id.*

14. *See also Brockman v. Salt Lake Farm Partnership,* 768 So.2d 836, 844 (La.App. 2nd Cir.2000).

15. *Fidelity Holding,* 837 F.2d at 698.

16. Exhibit 2.

17. Exhibit 39.

**(B).** *Breach of Fiduciary Duty*

Dr. Gutnisky asserts that he is due damages by Dr. Provenza, caused by his breach of fiduciary duty. The initial question is whether a fiduciary duty is owed by Dr. Provenza to Dr. Gutnisky.

■ Louisiana R.S. § 12:1320 specifies that the liability of members, managers, employees or agents of an LLC is determined solely and exclusively under the provisions of Louisiana LLC law. Generally, members and managers are not liable for a debt, obligation or liability of the LLC.[18] The members and managers, however, owe duties under section 1314, as follows:

> A. Subject to R.S. 12:1315, a member, if management is reserved to the members, or manager, if management is vested in one or more managers pursuant to R.S. 12:1312:
>
> (1) Shall be deemed to stand in a fiduciary relationship to the limited liability company and its members and shall discharge his duties in good faith, with the diligence, care, judgment, and skill which an ordinary prudent person in a like position would exercise under similar circumstances. Nothing contained in this Section shall derogate from any indemnification authorized by R.S. 12:1315.

Under section 1314, a manager or managing member owes a fiduciary duty to the LLC and its members. Section 1315 provides that either the articles of organization or the written operating agreement may eliminate or limit the personal liability of members or managers for monetary damages for breach of any duty provided for in section 1314.[19]

■■ In determining whether a member of a member–managed LLC or a manager–managed LLC has breached a fiduciary duty to the LLC and its members, the courts employ, at minimum, a gross negligence standard and the business judgment rule.[20] Gross negligence is defined as "a reckless disregard of or a carelessness amounting to indifference to the best interests of the limited liability company or the members thereof."[21] Under section 1314, an actionable breach of fiduciary duty would include intentional tortious conduct and intentional breaches of the duty of loyalty.[22]

The articles of organization of Southern Neurosurgical Group, LLC provide that the members of the LLC have the authority to manage the business and affairs of the LLC.[23] The operating agreement of Southern Neurosurgical Group, LLC, at paragraph 1.10, provides that the LLC shall be managed by a Board of Managers. Article 9 of the operating agreement provides that the initial Board of Managers shall consist of all three of the initial members of the LLC, including Dr. Provenza.

Under the operating agreement and articles, Dr. Provenza was a member of the Board of Managers of the LLC. As such, La. R.S. 12:1314 provides that Dr. Provenza owed a fiduciary duty to both the LLC and its members.

**(1).** *Defendant has failed to prove breach of fiduciary duty.*

■ In this case, the court finds that Dr. Gutnisky has failed to meet his burden

---

18. La. R.S. 12:1320(B).

19. La. R.S. 12:1315(A)(1).

20. La. R.S. 12:1314(B).

21. La. R.S. 12:1314(C).

22. *Id.*

23. Exhibit 3, Article of Organization, Article 4.

of proving that Dr. Provenza breached a fiduciary duty. Dr. Gutnisky argues that Dr. Provenza failed to inform him, prior to the signing of the 1998 Note, that Dr. Provenza was under IRS audit, had not paid his 1997 income taxes, and that he anticipated financial difficulties related to his divorce. Additionally, he asserts that Dr. Provenza failed to disclose that he had been assessed additional 1997 taxes and that his line of credit with BankOne had been terminated prior to the execution of the 1999 Note. Dr. Gutnisky argues that he would not have signed either note had he known these facts.

 Under Louisiana law, a fiduciary or mandatary is obligated to fulfill the mandate with "prudence and diligence." [24] If not, he is responsible for losses the principal sustains as a result of the failure to perform.[25] A cause of action for breach of fiduciary duty requires proof of fraud, breach of trust or actions outside the limits of the fiduciary's authority.[26]

Assuming that Dr. Provenza was a managing member to which section 1314 applies, none of the actions complained of rise to a breach of fiduciary duty owed to the LLC or its members. Dr. Gutnisky complains that prior to the execution and guarantee of the 1998 Note, Dr. Provenza had failed to pay his 1997 incomes taxes and estimated income taxes for the first and second quarter of 1998. Dr. Provenza testified that at the time the members signed the 1998 Note, he believed that he was current on his taxes.

The IRS proof of claim indicates that 1997 income taxes were assessed on December 28, 1998 in the amount of $47,982.00, and 1998 taxes were assessed on February 28, 2000 in the amount of $267,670.00.[27] Both assessments occurred after the signing of the first Bank One note in August 1998. The assessment for 1998 taxes did not occur until months after signing of the 1999 Note.

The Louisiana Department of Revenue claim shows that 1995 and 1996 income taxes were assessed in November 30, 1999 in the total principal amount of $10,838.00, 1997 income taxes were assessed on March 12, 1999 in the amount of $9,316.00, and 1998 incomes taxes were assessed in March, 2000 in the amount of $25,000.00.[28] All of these assessments occurred after signing of the 1998 Note and, with the exception of the March, 2000 assessment, after the 1999 Note.

Although Dr. Provenza may have known sometime prior to the signing of the 1999 Note that an audit of his tax liability for the period between 1995 and 1998 was underway, additional taxes for that period were not due until assessed. Any failure to mention that additional taxes were due was not a breach of fiduciary duty for which Dr. Gutnisky is due damages. Dr. Provenza, at the time the notes were signed, did not know the amount, if any, of additional taxes, that were due to the taxing authorities, and could not have told the other members of the amount due.

Likewise, the alleged failure of Dr. Provenza to mention his divorce prior to signing of the loans is not a breach of fiduciary duty owed to the LLC or its members. Dr. Provenza testified that his divorce proceedings commenced after the

24. La. Civ.Code art. 3001.

25. Id.

26. *Gerdes v. Estate of Cush,* 953 F.2d 201, 205 (5th Cir.1992); *Brockman v. Salt Lake Farm*

*Partnership,* 768 So.2d 836, 844 (La.App. 2nd Cir.2000).

27. Exhibit 9.

28. Exhibit 10.

signing of the 1998 Note. The court finds that the divorce could not have affected the signing of the 1998 Note, as it had not yet occurred. Dr. Provenza testified that he told either Dr. Gutnisky or Mr. Waring, who was advising the LLC, prior to the signing of the 1999 Note, that he was in divorce proceedings. At the time of the signing of the 1999 Note and guarantee, the effect of Dr. Provenza's divorce upon his personal finances was still unknown; however, Dr. Provenza was still practicing medicine and earning income. He continued to earn a large income on into 2000, the year of filing of the Chapter 11's.[29]

Dr. Gutnisky also complains that he would not have signed the Bank One indebtedness had he known that Bank One, in September 1998, had terminated Dr. Provenza's personal line of credit. The termination occurred after the signing of the 1998 Note, and is not relevant to that indebtedness. Dr. Provenza admits that he did not tell Dr. Gutnisky that the line of credit was terminated prior to signing of the 1999 Note and guarantee. He additionally testified that the line of credit was terminated when Bank One learned of his divorce proceedings.

The failure to mention a pending divorce, audit of tax liability to termination of the personal line of credit do not constitute actionable breaches of fiduciary duty. Dr. Provenza testified that a group meeting was held prior to formation of the LLC where each member's financial condition was discussed. Due diligence was performed as to each members' finances and the LLC members discussed their personal finances prior to signing the indebtedness.

Additionally, although the guarantors were bound *in solido*, the primary obligor of the Bank One debt is the LLC. The failure to mention a pending divorce, an audit of tax liability or termination of a personal line of credit, even if true, would not have changed the need for or the structure of the loan. Bank One had previously requested, and been provided with, solidary guarantees of the 1998 Note. A similar request was made in 1999, and it was also agreed to by the members. Insufficient evidence has been produced of a breach of the duty to inform to support a claim for damages.

### (2). *Damages under section 1315(B).*

▮ Even if this court determined that a breach of fiduciary duty has occurred, which it has not, the LLC's articles contained a limitation of liability that effectively eliminates the damages alleged by Dr. Gutnisky. Louisiana R.S. 12:1315 provides that the articles of organization or operating agreement may eliminate or limit personal liability of members or managers.[30] Article 5, section 1 of the LLC's Articles of Organization limit the liability of members for breach of fiduciary duties, as follows:

A member of this limited liability company shall not be personally liable to this limited liability company or to its members for monetary damages for breach of a fiduciary duty as a member of this limited liability company, except for liability a) for the amount of financial benefit received by the member to which it is not entitled, or b) for an intentional violation of criminal law.

---

29. Dr. Provenza's earnings as a neurosurgeon were sufficiently large that the Court on June 2, 2000 authorized the payment of $15,000.00 per week from Northshore. See Order Fixing Compensation. Pl. 28.

30. La. R.S. 12:1315(A)(1).

Dr. Gutnisky alleges that the debtor is liable for damages because personal liability cannot be eliminated under La. R.S. 12:1315(B) for "... the amount of a financial benefit received by a member or manager to which he is not entitled...."[31] Dr. Gutnisky argues that he has paid $89,493.00 on the Bank One debt, is liable for the remaining $34,749.55 owed, and that Dr. Provenza has received through the payments a financial benefit to which he was not entitled.

The LLC's operating agreement provides that profits and losses shall be allocated in proportion to each member's equity position, or 33.33% to each member.[32] Additionally, the 1998 tax return for the LLC provides that losses for the year be shared equally, or one-third by each member.[33] The 1998 tax return of Southern Neurosurgical Group, LLC was signed on April 9, 1999 by Dr. Gutnisky as the tax matters partner for 1998.[34]

■ Dr. Gutnisky alleges that the members subsequently changed the allocation of losses through a Memorandum of Understanding Relative to Suspension of Business Operations, dated May 4, 1999,[35] and that the LLC post-operations final statement allocated the balance due on the Bank One debt, with Dr. Gutnisky share being $28,259.97 and Dr. Provenza's share set as $84,990.60.[36] Dr. Gutnisky asserts that further support of the change in allocation of losses is found in the Chapter 11 in the debtor's Second Amended Plan ("Plan"), which provides that the Bank One obligation due by Southern Neurosurgical Group shall be paid as follows:
1. $91,852 virile share by Dr. Provenza be paid through monthly payments over five years;
2. The remaining $114,845.00 virile share be paid by Dr. Gutnisky and Dr. Correa.[37]

The court finds that insufficient evidence exists that the LLC agreed to a change in allocation of losses. The Memorandum of Understanding provides in pertinent part that:
"Debts owed to third parties by the Company as of May 10, 1999 (including the Bank One Line of Credit) shall be determined and fixed by The Apollo Group. Each Member's responsibility for the payment of these debts shall be determined using the agreed-upon and in-effect Company managerial accounting methodology."[38]

Nowhere in the Memorandum is the managerial accounting methodology articulated. The Memorandum of Understanding fails to specify how liabilities should be fixed. It also provides that any methodology be "agreed to." Dr. Provenza testified that he had never agreed to the Post–Operation Final Statement, and that he was not sure how the Apollo Group determined the percentage liability of each member. Insufficient evidence has been presented that Dr. Provenza agreed to the methodology exposed by Dr. Gutnisky, or that the LLC changed the calculation of losses as contained in the operating agreement, and as reflected on its filed tax return.

---

**31.** A violation of criminal law has not been asserted. No evidence has been presented of a criminal violation, and the court finds that no criminal violation has occurred.

**32.** Exhibit 34, at Article 7.

**33.** Exhibit 13.

**34.** *Id.*

**35.** Exhibit 14.

**36.** Exhibit 15.

**37.** Exhibit 11, at pg. 15.

**38.** *Id.* at article 7, page 4.

Additionally, the court finds that the Plan fails to specify the amount Dr. Gutnisky would pay on the Bank One indebtedness, and provides insufficient evidence that the parties agreed to limit Dr. Gutnisky's liability to only $30,940.12. In any event, the amount provided in the Plan would only control payment if the Plan were confirmed, which it was not, and does not necessarily reflect the liability as agreed to by the members in the LLC articles or other agreement.

Using a one-third ratio, each member's virile share of the total Bank One indebtedness at the winding up of the LLC would equal approximately $68,965.00. The evidence at trial was that Dr. Provenza's bankruptcy estate paid $126,765.35 of the Bank One indebtedness, or more than one-third of the amount due, and more than the amount contained in the Post–Operation Final Statement. Because Dr. Provenza has paid more than his virile share of the indebtedness, he has not received a financial benefit to which he was not entitled. Accordingly, the plaintiff has failed to meet his burden of proving damages.

### (C). *Neither contribution nor subrogation provide a basis for the claim.*

█ Dr. Gutnisky, in his original response to the objection to claim, asserted a claim for subrogation and contribution under 11 USC § 502(e) in the amount of $34,059.88, or the unpaid amount of the Bank One indebtedness.[39] Dr. Gutnisky does not raise the issue of contribution or subrogation in his pre-trial memorandum, and states in his post-trial memorandum that "[c]ontribution is not an issue." The claim for subrogation and contribution has been abandoned. To the extent not aban-

doned, contribution and subordination are not available.

Dr. Gutnisky's claim for contribution is a contingent claim, that is subject to disallowance under 11 USC § 502(e)(1)(B). Under § 502, disallowance occurs when "such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.…" In order for a claim of contribution to be allowed, the underlying indebtedness to the primary obligor must be paid.[40] Similarly, La. Civ.Code art. 1804 provides a right of contribution to "a solidary obligor who has rendered the whole performance.…" Under 11 U.S.C. § 509(c), a guarantor must satisfy the primary obligee's claim in full, or its claim for reimbursement or contribution is subordinated to the primary obligee's claim. Because the Bank One claim remains unpaid, neither contribution nor subrogation are available to Dr. Gutnisky.

For the foregoing reasons, the court will grant the trustee's objection to the claim of Gustavo A. Gutnisky, claim no. 56, and disallow the claim in its entirety.

---

39. Response, Pl. 940; Amended Response of Gustavo A. Gutnisky, M.D., Pl. 973.

40. 4 *Collier on Bankruptcy,* ¶ 502.06[2][d] at pg. 502–60 n. 17.