Revised December 30, 1998

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 97-41291**
**Summary Calendar**

---

**CHANDLER WENDELL, JR.,**

**Plaintiff-Appellant,**

**VERSUS**

**LLOYD ASHER, Correctional Officer; WILLIAM PITTMAN,**
**Correctional Officer; BILLYE FORREST, Correctional**
**Lieutenant; RICKY TARVER, Correctional Captain; MIKE**
**NICHOLS, Correctional Major; TRACEY PORTER, Classification**
**Officer; LINDA DEHOYOS, Doctor; TIMOTHY WEST, Senior Warden,**

**Defendants-Appellees.**

---

Appeal from the United States District Court
for the Eastern District of Texas

December 24, 1998

Before DUHÉ, DeMOSS, and DENNIS, Circuit Judges.

DeMOSS, Circuit Judge:

Texas state prisoner Chandler Wendell, Jr. appeals the district court's dismissal of this civil rights action for failure to exhaust administrative remedies prior to bringing suit. We affirm.

## I. RELEVANT FACTS

Proceeding pro se and in forma pauperis, Wendell filed a civil rights complaint pursuant to 42 U.S.C.A. § 1983 against Correctional Officer Lloyd Asher, Sergeant William Pittman, Lieutenant Billye Forrest, Captain Ricky Tarver, Major Mike Nichols, Classification Officer Tracey Porter, Prison Psychiatrist Dr. Linda Dehoyos, and Warden Timothy West, all prison officials at the Stiles Correctional Facility in Beaumont, Texas.

Wendell suffers from AIDS and is housed in a medical administrative segregation unit. On June 17, 1997, Officer Asher arrived to escort Wendell to an appointment with prison psychiatrist Dr. Linda Dehoyos. En route, Wendell requested that he be taken by the medical unit where he could obtain cough syrup for congestion. Officer Asher refused. When Wendell arrived at Dr. Dehoyos' office, he explained his physical symptoms to the doctor and again requested cough syrup. Dr. Dehoyos escorted Wendell to the medical unit for further examination.

While a prison nurse was taking Wendell's vital signs, Officer Asher came into the medical unit and, according to Wendell, became angry that Wendell had requested cough syrup again. Wendell claims that Officer Asher told the nurse to disconnect Wendell from the monitoring equipment and then told Wendell that he had "messed up." Officer Asher instructed Wendell to get up and return to his cell.

2

Apparently Wendell hesitated, which angered Officer Asher more. Eventually, Officer Asher physically pulled Wendell to a standing position and began walking him to the door. Wendell claims that Officer Asher took two steps toward the door and then suddenly jerked up on the handcuffs which were fastened behind Wendell's back, forcing Wendell down over Asher's leg and to the floor. While Wendell was down, Officer Asher jumped on his back, grabbed his head and began banging it on the concrete floor. Wendell, who states that he is in the last stages of a terminal case of AIDS, claims he did not resist.

The entire incident was observed by Dr. Dehoyos and the prison nurse. Wendell claims that he sustained serious injury. Specifically, Wendell claims that his face was split open above the left eyebrow. Wendell also claims that Officer Asher jerked the handcuffs so hard that the right cuff was ripped off his hand, creating a two inch laceration. Finally, Wendell claims that his ribs were bruised.

After the incident, Officer Asher reported Wendell for a disciplinary infraction, claiming that Wendell had refused to respond to a repeated order to stand up. Defendant Captain Tarver investigated the disciplinary report. On June 27, 1997, there was a hearing on the merits of Officer Asher's disciplinary report against Wendell. At the hearing, Wendell claims that he and his representative were instructed to wait outside while Captain Tarver "coached" Archer on his testimony. Officer Archer then testified

that Wendell had refused to stand up when Asher gave him a direct order in the medical unit. Wendell claims that the prison nurse gave conflicting testimony that Wendell did get up when asked. Captain Tarver found that Wendell had committed a disciplinary infraction, and imposed significant additional restraints on Wendell's confinement as a result. Wendell claims that the disciplinary report and subsequent hearing were merely a contrivance to conceal or distract attention from Officer Asher's misconduct towards Wendell, in violation of his federally protected right to due process.

Wendell also claims that the June 17, 1997 incident was not the first time that he had either been subjected to excessive physical force or threatened with the use of excessive force by correctional officers at the medical segregation unit. Wendell's Original Complaint describes at least two prior incidents of excessive force, which occurred in December 1995 and November 1996, and are apparently the subject of another pending civil rights case. Wendell claims that he requested a transfer to another facility in April 1997 because he feared for his safety in the wake of these prior incidents. Wendell alleges that defendant Porter, a classification officer at the unit, played a role in denying the April 1997 transfer request.

Wendell also describes at least two incidents in which he was threatened with physical force by correctional officers at the medical segregation unit. Both of those incidents occurred in May

4

1997. Wendell claims that the May 1997 threats of violence were either witnessed by or related to Sergeant Pittman, Lieutenant Forrest and Major Nichols, but that those officials took no action to protect him from further harm. Wendell also claims that he informed the prison psychiatrist, Dr. Dehoyos about the problem, but that the doctor expressed a reluctance to get involved in "security issues." Finally, Wendell claims that the warden, defendant West, had actual knowledge that medical segregation inmates were being physically abused by the guards and that West acquiesced in that unconstitutional treatment.

## II.   PROCEDURAL HISTORY

Wendell filed suit on July 28, 1997. Wendell's Original Complaint alleges Eighth Amendment claims for use of excessive force and deliberate indifference to his right to be free from the use of excessive force against Officer Asher, Sergeant Pittman, Lieutenant Forrest, Major Nichols, Dr. Dehoyos, Warden West, and the Classification Officer, Porter. Wendell's Original Complaint also alleges Fourteenth Amendment claims for deprivation of due process in the handling of the disciplinary hearing and subsequent disciplinary action against Captain Tarver and Officer Asher. Wendell's Original Complaint unambiguously seeks both monetary and injunctive relief. Specifically, Wendell asks that he be transferred from the facility where he is being held, that the

federal courts enjoin all harassment and retaliation by prison officials until he is transferred, that his disciplinary record be expunged to eliminate any consequences from the tainted disciplinary proceedings, that he be returned to the more favorable classification status that he enjoyed prior to the disciplinary hearing, and finally, that the federal court award him actual and exemplary monetary damages against all defendants.

The district court referred the matter to a Magistrate Judge. The Magistrate Judge entered a Memorandum and Recommendation noting that Wendell's Complaint had been filed on July 28, 1997, only a short time period after the June 17, 1997 incident, and that Wendell had not alleged exhaustion of administrative remedies. Wendell filed objections, asserting that administrative remedies were exhausted as of July 30, 1997, two days after his Complaint was filed. The district court conducted a de novo review and then dismissed for failure to exhaust administrative remedies prior to filing suit.

### III.  THE STATUTORY EXHAUSTION REQUIREMENT

Title 42 U.S.C.A. § 1997e requires that a state prisoner exhaust available administrative remedies prior to filing suit in federal district court under 42 U.S.C.A. § 1983.  The applicable version of § 1997e provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any

6

other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C.A. § 1997e (Supp. 1998).  That provision plainly requires that administrative remedies be exhausted *before* the filing of a § 1983 suit, rather than while the action is pending.

Section 1997e was substantially amended by passage of the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, § 803, 110 Stat. 1321, which took effect April 26, 1996.  Prior to passage of the PLRA, § 1997e provided only that a federal district court had the discretion to require exhaustion when such a requirement would be "appropriate and in the interests of justice."  The pre-PLRA version of § 1997e limited that discretion by including requirements that the available remedies be "plain, speedy, and effective," and that they meet certain minimum standards defined in the statute.  *See* 42 U.S.C.A. § 1997e (1994).  Even if the court made a decision to require exhaustion, the statutory procedure under the pre-PLRA version of § 1997e was to stay the case for up to 180 days to permit exhaustion.  Thus, prior to April 1996, the statutory exhaustion requirement applicable to § 1983 suits by state prisoners was entirely discretionary, subject to significant limitations, and required merely a stay, rather than dismissal. *Cf.* **Underwood v. Wilson**, No. 97-40536, 1998 WL 476217 (5th Cir. Aug. 14, 1998); **Whitley v. Hunt**, No. 97-40938, 1998 WL 740134 (5th Cir. Oct. 23, 1998).

We recently held that the exhaustion requirement imposed by amended § 1997e is not jurisdictional. *Underwood*, 1998 WL 476217 at *2-3. Rather, the amended statute imposes a requirement, rather like a statute of limitations, that may be subject to certain defenses such as waiver, estoppel, or equitable tolling. *See id*. at *3 (citing *Zipes v. Trans World Airlines*, 102 S. Ct. 1127 (1982)). "[N]on-jurisdictional exhaustion requirement[s] may, in certain rare instances, be excused." *Id*. at *5 (citing *McCarthy v. Madigan*, 112 S. Ct. 1081 (1992)). *McCarthy* stated that the decision to require exhaustion pursuant to § 1997e would depend in part upon the relative strength of the individual prisoner's interest in obtaining prompt judicial redress and the countervailing institutional interests that favor exhaustion. *See McCarthy*, 112 S. Ct. at 1087. *McCarthy*, however, was interpreting the limited and discretionary exhaustion requirement embodied in the pre-PLRA version of § 1997e. That largely discretionary balancing test cannot survive Congress' 1996 amendment of § 1997e. By shearing § 1997e of the substantial limitations upon exhaustion that were embodied in the prior version of the statute, Congress unambiguously expressed its intent that exhaustion be generally imposed as a threshold requirement in prisoner cases. *Underwood*, 1998 WL 476217 at *5 (identifying Congressional purpose to provide relief from frivolous prisoner claims by requiring exhaustion); *see also Garrett v. Hawk*, 127 F.3d 1263, 1265 (10th Cir. 1997). It

8

would therefore be contrary to both Congress' intent and the plain language of the amended statute to continue applying in every case the discretionary balancing test defined in **McCarthy** for use with the pre-PLRA version of the statute. Absent a valid defense to the exhaustion requirement, *e.g.*, **Whitley**, 1998 WL 740134 (holding that § 1997e does not require exhaustion of remedies that are not capable of providing redress, and therefore "available"), the statutory requirement enacted by Congress that administrative remedies be exhausted *before* the filing of suit should be imposed. To hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation. *See* **Underwood**, 1998 WL 476217 at *5 (citing legislative history in support of decision dismissing claims that were exhausted after suit was filed but before claims were dismissed).

Having identified the statutory exhaustion requirement and having defined the relevant test for determining whether the requirement may be excused, we turn to an examination of whether Wendell exhausted available remedies before filing suit.

## IV. WENDELL'S ADMINISTRATIVE GRIEVANCES

The Texas Department of Criminal Justice currently provides a two-step procedure for presenting administrative grievances. Step

9

1 requires the prisoner to submit an administrative grievance at the institutional level. TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Administrative Directive No. AD-03.82 (rev.1), Policy ¶ IV (Jan. 31, 1997). After an investigation, the unit grievance investigator prepares a report and makes a recommendation to the final decision maker for step 1 of the process, which may be the warden, assistant warden, facility administrator, assistant facility administrator, or health administrator. *Id*. Step 2 permits the prisoner to submit an appeal to the division grievance investigation with the Institutional Division of the Texas Department of Criminal Justice. After an investigation, the departmental grievance investigator prepares a report and makes a recommendation to the final decision maker for step 2 of the process, which is the director, deputy director, regional director or assistant director. *Id*.

The grievance procedure takes approximately 90 days to exhaust. Prisoners are allowed 15 calendar days to file a step 1 grievance. TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Administrative Directive No. AD-03.82 (rev.1), Policy ¶ VI (Jan. 31, 1997). The response to the step 1 grievance is due within forty days after receipt of the grievance. *Id*. The prisoner then has 10 days to submit an appeal. *Id*. The response to the step 2 grievance is due within forty days after receipt of the prisoner's appeal. *Id*.

Wendell filed a step 1 grievance raising issues relating to his Eighth Amendment claims on June 17, 1997, the same day that he

10

claims he was beaten by Officer Asher. That grievance was timely denied on June 24, 1997. On June 25, 1997, Wendell appealed that determination, again raising his Eighth Amendment claims that Officer Asher subjected him to excessive force and that certain officials at his unit were deliberately indifferent to his right to be free from excessive force at the hands of prison guards. Two days later, on June 27, 1997, Captain Tarver conducted the disciplinary hearing which serves as the basis for Wendell's Fourteenth Amendment due process claims. Wendell did not file any administrative grievances, either at the institution or with the Texas Department of Criminal Justice specifically relating to those claims. On July 28, 1997, and before the Texas Department of Criminal Justice responded to Wendell's step 2 grievance, Wendell filed this lawsuit. Two days later, on July 30, 1997, the Texas Department of Criminal Justice issued an order stating that Wendell's grievance had been "referred to Internal Affairs." The record does not reflect whether any further action was taken with respect to Wendell's step 2 grievance, but the grievance would have been deemed denied as of the fortieth day after it was received by the Texas Department of Criminal Justice, or no later than August 4, 1997. *See Underwood*, 1998 WL 476217 at *4.

From the foregoing facts, it is clear that Wendell filed this suit before exhausting available administrative remedies. With respect to his Eighth Amendment excessive force claims, those

11

claims were not exhausted until several days *after* Wendell filed suit. With respect to his Fourteenth Amendment due process claims, the record reflects that Wendell has never pursued administrative remedies at all.

Wendell has not raised any valid excuse for failing to exhaust available administrative remedies. Although he makes a conclusory allegation that the administrative procedures are inadequate, he does not provide any facts to support that allegation, and it does not appear from the record that any barrier was imposed to Wendell's expedient exhaustion of available remedies with respect to his Eighth Amendment claims. Moreover, we note that the dismissal of Wendell's claims in this case will not cause any injustice or render judicial relief unavailable. Wendell's claims were dismissed without prejudice to refiling. Wendell has now exhausted administrative remedies as to his Eighth Amendment claims. Those claims are governed by Texas' two-year statute of limitations, which will not expire until at least April 1999, two years after the earliest date that Wendell claims he informed the named prison officials he was being threatened with excessive force. ***Gonzales v. Wyatt***, No. 97-41074, 1998 WL 698866 (5th Cir. Oct. 23, 1998).[1] Wendell may pursue those claims in federal court

---

[1] Texas law, unlike many other states, does not provide that imprisonment is a legal disability capable of tolling the applicable statute of limitations. *See **Gonzales v. Wyatt***, No. 97-41074, 1998 WL 698866 at *3 (5th Cir. Oct. 23, 1998); TEX CIV. PRAC. & REM. CODE § 16.001 (amending definition of legal disability in

12

immediately.  Wendell has not pursued administrative remedies with respect to his Fourteenth Amendment claims.  Those remedies may be exhausted, however, within 90 days after the issuance of this opinion.  Wendell's due process claims are also governed by Texas' two-year statute of limitations period, which will not expire until at least June 1999, two years after the challenged disciplinary hearing.  *Pete v. Metcalfe*, 8 F.3d 214 (5th Cir. 1993).  Provided Wendell acts promptly, we conclude that there are no apparent barriers to the refiling of this action in federal district court once he exhausts his administrative remedies as required by § 1997e.  Given the statutory mandate of § 1997e, we must affirm the district court's dismissal of Wendell's claims for failure to exhaust administrative remedies prior to filing suit as required by 42 U.S.C.A. § 1997e.[2]

---

Texas to exclude imprisonment).

[2]   Wendell now claims that he is seeking only monetary damages.  But Wendell's conclusory and fleeting argument on this point is blatantly inconsistent with his active pleadings in the district court.  Wendell made no request or attempt to amend those pleadings in the district court, and we will not entertain such an attempt on appeal.  Wendell will be the master of his pleadings when the suit is refiled, and may so limit his request for relief if he desires at that time. *See **Marsh v. Jones***, 53 F.3d 707 (5th Cir. 1995) (state prisoner need not pursue administrative remedies prior to filing suit for monetary damages if the applicable state remedies are incapable of affording the prisoner monetary relief); Texas Department of Criminal Justice, Administraive Directive No. AD-03.82 (rev.1), Remedies ¶ II (Jan. 31, 1997) ("Requests for disciplinary action against employees or for consequential or punitive damages will not be addressed through the grievance procedures.").

**V.  WENDELL'S MOTION FOR APPOINTMENT OF COUNSEL ON APPEAL**

Wendell moved for appointment of counsel on appeal in the district court.  That motion was effectively denied by the district court's failure to rule, a decision we review for abuse of discretion.  *Jackson v. Dallas Police Dep't*, 811 F.2d 260, 261 (5th Cir. 1986).

Absent exceptional circumstances, there is no automatic right to appointment of counsel in a civil rights case.  *Akasike v. Fitzpatrick*, 26 F.3d 510, 512 (5th Cir. 1994).  The purely legal issue presented for the Court's consideration on appeal is neither peculiar nor complex.  The record is sufficient, without further development or argument of counsel, to support our decision in this matter.  For that reason, we find no error in the district court's refusal to appoint counsel for Wendell's appeal.


**VI.  CONCLUSION**

For the foregoing reasons, the district court's dismissal of Wendell's § 1983 action without prejudice for failure to exhaust administrative remedies as required by 42 U.S.C.A. § 1997e is AFFIRMED.