**UNITE STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 98-30617

MARK ANTHONY HARRIS,

Plaintiff-Appellant,

VERSUS

MICHAEL HEGMANN, JANET BOYD, and ROSE JAMES,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Louisiana

December 8, 1999

Before KING, Chief Judge; STEWART, Circuit Judge; and ROSENTHAL,
District Judge.[*]

PER CURIAM:

Mark Anthony Harris, a Louisiana state prisoner, sued
three prison medical staff members under 42 U.S.C. § 1983, alleging
deliberate indifference to his serious medical needs in violation
of the Eighth Amendment.  Harris exhausted the administrative
procedures available within the state prison system, then filed
suit in state  court, and finally filed his federal suit.  Because
Harris did not file this federal lawsuit until approximately 17
months after the events at issue, the district court concluded that
Harris's claims were barred by the one-year prescription period

---

[*]      District Judge of the Southern District of Texas,
sitting by designation.

applicable to federal civil rights suits filed in Louisiana.  We conclude that Harris's exhaustion of his administrative remedies tolled the prescriptive period and that Harris's federal claims were timely filed.  Accordingly, we REVERSE and REMAND for further proceedings.

## I.  BACKGROUND

On October 7, 1996, appellant Mark Anthony Harris, an inmate at the Hunt Correctional Center in St. Gabriel, Louisiana,[1] received medical treatment for a broken jaw.  On October 26, 1996, doctors at the oral surgery clinic of the Earl K. Long Hospital removed the retaining wires used to set Harris's jaw.  Some thirty to forty minutes later, as Harris waited in an outside holding cell, his jaw shifted and "fell out of place," causing him excruciating pain.  Harris told the corrections officer supervising him that his jaw had "slipped" and asked to be taken back into the oral surgery clinic to have the jaw reset.  The officer replied that he could not take Harris back inside the clinic.  The officer instead tried to reach the clinic staff by telephone, but was unsuccessful.  Harris had to return to the Hunt Correctional Center without treatment.

At the infirmary of the Correctional Center, Harris told Rose James, a licensed practical nurse, that his jaw had "fallen out of place," that he was in great pain, and that he required emergency medical attention.  James told Harris that he did not

---

[1]    Harris is now a prisoner at the Allen Correctional Center in Kinder, Louisiana.

2

need to see the prison doctor. Instead, James made an appointment for Harris to see a dentist on a non-emergency basis. Harris complained, without result.

The following morning, October 23, 1996, Harris complained to Janet Boyd, a registered nurse, about his jaw, his pain, and his need for immediate treatment. Boyd remarked that Harris already had an appointment to see the dentist and left. That afternoon, Harris was able to see Dr. Michael Hegmann, who was making his weekly rounds at the Correctional Center. Harris explained his medical problem to Dr. Hegmann. The doctor performed a cursory inspection of Harris's mouth, told an accompanying doctor that Harris could be discharged from the clinic, and left. That evening, Harris persuaded another nurse to log his complaint and send a request for immediate treatment to the dental department.

The following afternoon, October 24, 1996, Harris was discharged from the infirmary. Dr. Hegmann's discharge orders called for Harris to return to a working cell block and eat a normal diet. Dr. Hegmann's discharge orders overrode the hospital surgeon's order, issued two days earlier, that Harris remain on a liquid diet for one week. Harris filed a written administrative complaint.

Harris was scheduled for a routine follow-up appointment at the oral surgery clinic of the hospital on October 30, 1996. No medical professional saw Harris between the examination by Dr. Hegmann on October 23, 1996, and his return visit to the hospital on October 30, 1996. Harris alleges that during that week, he

3

suffered constant and extreme pain, magnified by his struggle to eat solid food with a broken jaw. When Harris returned to the hospital's oral surgery clinic for the follow-up appointment, an x-ray quickly verified that Harris's jaw had rebroken. Clinic staff reset and rewired the jaw the same day.

The Louisiana prison system has established a three-step administrative review procedure for prisoner complaints. Under this system, Harris's administrative complaint was first reviewed by the prison hospital administrator, then by the warden of the Correctional Center, and finally by the Secretary of Corrections for the State. At each level of review, Harris was denied relief. The Louisiana Department of Corrections issued the final denial of Harris's administrative complaint on July 14, 1997.

Officials of the Louisiana Department of Corrections told Harris that he must appeal the denial of his administrative complaint in the Louisiana state courts before filing a federal civil rights lawsuit. Following this instruction, Harris filed suit in the 19th Judicial District Court of Louisiana on June 30, 1997. On February 5, 1998, the state court dismissed Harris's suit. On March 25, 1998, Harris filed this suit in the federal district court for the Middle District of Louisiana, Baton Rouge Division. Proceeding pro se and in forma pauperis, Harris asserted section 1983 claims against Hegmann, James, and Boyd for their refusals to provide medical attention and treatment between October 22 and October 30, 1996.

On April 8, 1998, the magistrate judge recommended dismissal of Harris's complaint as untimely. The magistrate judge concluded that Harris's claims were prescribed by the one-year limitation period established by the Louisiana Civil Code, Article 3536, because Harris did not file his federal suit for 17 months after the challenged acts occurred. The magistrate judge recommended that Harris's complaint be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i), as lacking an arguable basis in law, and under 28 U.S.C. § 1915(e)(2)(B)(ii), as failing to state a claim upon which relief could be granted.

In response to the magistrate judge's report and recommendation, Harris wrote to the district court and explained that he had waited to file his federal suit until he had exhausted his prison administrative remedies and his state law remedies. Harris argued that he should be allowed an extension of time in order to permit his case to go forward. The district court treated Harris's letter as an objection to the magistrate judge's report and recommendations, adopted the magistrate judge's report and recommendation, and, without requiring the defendants to answer, dismissed Harris's federal claims with prejudice on May 21, 1998.

Harris filed a timely notice of appeal. Before this court, Harris renews his contention that he timely filed his federal suit because prescription was equitably tolled while his

5

prison administrative claims were pending in the Louisiana Department of Corrections.  We agree.[2]

## II.  THE STANDARD OF REVIEW

The Prison Litigation Reform Act (PLRA) of 1995, Pub. L. No. 104-134, 110 Stat. 1321, amended 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) to require a district court "to dismiss [an] *in forma pauperis* (IFP) prisoner civil rights suit[] if the court determines that the action is frivolous or malicious or does not state a claim upon which relief may be granted."  Black v. Warren, 134 F.3d 732, 733 (5th Cir. 1998) (citing Mitchell v. Farcass, 112 F.3d 1483, 1489-90 (11th Cir. 1997)).  This court reviews dismissals based on section 1915(e)(2)(B)(ii) under the same de novo standard of review applicable to dismissals made pursuant to Federal Rule of Civil Procedure 12(b)(6).  See Black, 134 F.3d at 734.  "A district court's dismissal of a complaint under this subsection may be upheld only if, taking the plaintiff's allegations as true, it appears that no relief could be granted based on the plaintiff's alleged facts."  Bass v. Parkwood Hosp., 180 F.3d 234, 240 (5th Cir. 1999) (citing Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998)).

Under section 1915(e)(2)(B)(i), a district court may dismiss as frivolous a prisoner's IFP complaint if it lacks any

---

[2]  Harris argues that tolling applies both to the time during which he pursued his administrative remedies and to the time during which he pursued his state court lawsuit.  Because Harris filed his federal complaint within one year of the final action on his administrative complaint, we need not reach the question of whether the pendency of the state lawsuit tolled the prescriptive period.

6

arguable basis in law or fact. See Neitzke v. Williams, 490 U.S. 25, 319-325 (1989); Harper v. Showers, 174 F.3d 716, 718 (5th Cir. 1999); McDonald v. Johnson, 139 F.3d 1056, 1060 (5th Cir. 1998). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist." Harper, 174 F.3d at 718 (quoting Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); see also Spicer v. Collins, 9 F. Supp.2d 673, 687 (E.D. Tex. 1998) (dismissing an inmate's claim that he was denied one meal and forced to work on an empty stomach). A complaint is factually frivolous when "the facts alleged are 'fantastic or delusional scenarios' or the legal theory upon which a complaint relies is 'indisputably meritless.'" Eason v. Thaler, 14 F.3d 8,9 n.5 (5th Cir. 1994) (quoting Neitzke, 490 U.S. at 327-28).

In an action under section 1915, a district court may raise the defense of limitations sua sponte. See Gartrell v. Gaylor, 981 F.2d 254, 256 (5th Cir. 1993) (citing Ali v. Higgs, 892 F.2d 438, 440 (5th Cir. 1990); Burrell v. Newsome, 883 F.2d 416, 418 (5th Cir. 1989)). Dismissal is appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations. See id.

### III.  THE LIMITATIONS ANALYSIS

Federal courts borrow state statutes of limitations to govern claims brought under section 1983. See Burge v. Parish of St. Tammany, 996 F.2d 786, 788 (5th Cir. 1993) (citing Hardin v.

7

<u>Straub</u>, 490 U.S. 536, 538-39 (1989); <u>Jackson v. Johnson</u>, 950 F.2d 263, 265 (5th Cir.1992)).  Although federal courts look to federal law to determine when a civil rights action accrues, <u>see</u> <u>Jackson v. Johnson</u>, 950 F.2d at 265, state law supplies the applicable limitations period and tolling provisions.  <u>See</u> <u>Gartrell</u>, 981 F.2d at 257 ("In applying the forum state's statute of limitations, the federal court should also give effect to any applicable tolling provisions.").  Under federal law, a section 1983 action generally accrues when a plaintiff "knows or has reason to know of the injury which is the basis of the action."  <u>Jackson</u>, 950 F.2d at 265 (internal quotation marks omitted) (quoting <u>Burrell v. Newsome</u>, 883 F.2d 416, 418 (5th Cir.1989)).

Without tolling, Harris's suit is clearly prescribed. Harris's allegations establish that he knew  in October 1996 of the refusal to provide him medical care and the identity of the persons he believed responsible for the refusal.  The question is whether the pendency of Harris's state administrative proceedings tolled the prescriptive period.

Because Harris is a state prisoner proceeding in forma pauperis, his action is governed by 42 U.S.C. § 1997e.  The PLRA, which took effect on April 26, 1996,  significantly amended section 1997e.  Under the pre-PLRA version of section 1997e, federal district courts had discretionary authority to require a prisoner to exhaust administrative remedies inside the prison system when "appropriate and in the interests of justice," 42 U.S.C. § 1997e(a)(1994), and when the administrative remedies provided were

8

"plain, speedy, and effective."  The PLRA removed this discretion.

Section 1997e now provides that:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (West Supp. 1999).

Section 1997e clearly requires a state prisoner to exhaust available administrative remedies before filing a section 1983 suit and precludes him from filing suit while the administrative complaint is pending.  Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998).  "Congress unambiguously expressed its intent that exhaustion be generally imposed as a threshold requirement in prisoner cases."  Id.; see also Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998).[3]

This court has held that "[a] district court should not require exhaustion under section 1997e if the prisoner seeks only monetary damages and the prison grievance system does not afford such a remedy."  Whitley v. Hunt, 158 F.3d 882, 887 (5th Cir. 1998) (internal quotation marks omitted) (quoting Marsh v. Jones, 53 F.3d 707, 710 (5th Cir. 1995).  The Louisiana Legislature enacted LA. REV. STAT. ANN. § 15:1171-79 (West Supp. 1999) as an express authorization for the Louisiana Department of Public Safety and Corrections (LDPSC) to promulgate administrative complaint procedures for the prison system.  See Marsh v. Jones, 53 F.3d at 711.  Since 1989, the statute has explicitly granted authority to

---

[3] This court has previously held that the exhaustion requirement under amended section 1997e is not jurisdictional. See Underwood, 151 F.3d at 293-95.  "Rather, the amended statute imposes a requirement, rather like a statute of limitations, that may be subject to certain defenses such as waiver, estoppel, or equitable tolling."  Wendell, 162 F.3d at 890 (citing Underwood, 151 F.3d at 294-95).

the LDPSC to award monetary damages to inmates who prevail in their administrative complaints. Harris invoked an administrative procedure under which he could, and did, seek monetary damages as a remedy. Whitley v. Hunt is therefore not applicable. See Marsh v. Jones, 53 F.3d at 711 (citing Gibson v. Barnes, 597 So.2d 176, 177 (La. Ct. App. 1992).[4] In this federal civil rights suit, Harris seeks monetary damages from members of the prison medical staff for their alleged deliberate indifference to his serious medical needs. Under the PLRA and this court's precedent, Harris had to exhaust the administrative remedies the Louisiana Legislature established for the prison system. See Wendell, 162 F.3d at 892 (affirming the "district court's dismissal of [plaintiff's] claims for failure to exhaust administrative remedies prior to filing suit as required by 42 U.S.C.A. § 1997e").

In Rodriquez v. Holmes, 963 F.2d 799 (5th Cir. 1992), a prisoner civil rights suit filed in Texas, this court held that the Texas statute of limitations was tolled while the plaintiff exhausted his available state administrative remedies. Louisiana law similarly recognizes required exhaustion of administrative remedies as a ground to toll prescription. The Louisiana Civil Code, Article 3492, establishes a one-year liberative prescription

---

[4] The courts of appeals have divided over the question of whether a prisoner seeking solely monetary damages has a duty to exhaust when the state prison system does not provide monetary damages as a remedy. This court and the Ninth and Tenth Circuits do not require exhaustion when monetary damages are sought but such a remedy is unavailable. See Whitley v. Hunt, 158 F.3d at 886; Lunsford v. Jumao-As, 155 F.3d 1178, 1179 (9th Cir.1998); Garrett v. Hawk, 127 F.3d 1263, 1267 (10th Cir.1997). The Sixth, Seventh, and Eleventh Circuits do require exhaustion. See Lavista v. Beeler, 1999 WL 970372 at *3 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532, 537 (7th Cir. 1999); Alexander v. Hawk, 159 F.3d 1321, 1326-28 (11th Cir.1998). Because Louisiana has provided for monetary remedies in its administrative review system, the circuit split is not relevant to the disposition of this appeal.

for civil actions sounding in tort.  *See* LA. CIV. CODE ANN. art. 3492 (1994); cf. Elzy v. Roberson, 868 F.2d 793, 794 (5th Cir. 1989) (affirming an application of article 3492 to a section 1983 claim). "Prescription runs against all persons unless an exception is established by legislation."  LA. CIV. CODE ANN art. 3467 (1994). Louisiana courts do not apply prescription against a party who is legally unable to act.[5]  See Burge*,* 996 F.2d at 788 (5th Cir. 1993) (citing Plaquemines Parish Comm'n Council v. Delta Dev. Co., 502 So.2d 1034, 1055-56 (La. 1987)).  "This doctrine, probably founded on the principles of equity, justice, fairness, or even natural law suspends the running of prescription when the 'plaintiff was effectually prevented from enforcing his rights for reasons external to his own will.'"  FDIC v. Caplan, 874 F. Supp. 741, 745 (W.D. La. 1995) (quoting Wimberly v. Gatch, 635 So.2d 206, 211 (La. 1994)).  Once a plaintiff becomes legally capable of bringing an action to vindicate or enforce his rights, prescription resumes. *See* LA. CIV. CODE ANN. art. 3472 (1994).

Louisiana courts recognize four distinct factual situations involving a legal inability to act which may toll prescription:

> (1) when courts are legally closed;  (2) when administrative or contractual restraints delay the plaintiff's action;  (3) when the defendant prevents the plaintiff from bringing suit;  and (4) when the plaintiff does not know nor reasonably should know of the cause of action.

In re Medical Review Panel Proceeding Vaidyanathan, 719 So.2d 604, 607 (La. Ct. App. 1998); see also Burge, 996 F.2d at 788.

Harris could not file this federal civil rights suit until he exhausted the available state administrative remedies, as

---

[5]    Louisiana courts refer to this suspension of prescription as the doctrine of *contra non valentem agere nulla praescriptio*. Burge, 996 F.2d at 788.

section 1997e requires. This exhaustion requirement functioned as a "legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action." Id. (prescription tolled during exhaustion of state habeas remedies); see also Whitley v. Hunt, 158 F.3d at 886. While Harris pursued his administrative remedies from October 24, 1996, to July 14, 1997, the prescriptive period was tolled. Harris timely filed this federal civil rights claim within one year after the prescriptive period began to run. Harris's civil rights claims are not barred by prescription and his complaint cannot be said to lack "an arguable basis in law." Section 1915(e)(2)(B)(i) does not provide a basis to dismiss Harris's complaint.

## IV. THE CLAIM FOR DELIBERATE INDIFFERENCE

The magistrate judge recommended dismissal of Harris's suit under both sections 1915(e)(2)(B)(i) and (ii). The remaining question is whether Harris's complaint states a claim upon which relief may be granted. We conclude that his complaint does allege facts that present a cognizable claim for relief.

"[I]nadequate medical care by a prison doctor can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to [the prisoner's] serious medical needs, constitut[ing] the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999) (internal quotation marks omitted) (alterations in original) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Under the "deliberate indifference"

12

standard, a prison official is not liable for the denial of medical treatment "unless the official knows of and disregards an excessive risk to inmate health or safety". Stewart, 174 F.3d at 534 (citing Estelle, 429 U.S. at 104). While malpractice and negligent treatment do not rise to the level of a constitutional tort, see Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993), a claim of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," can state a claim of a constitutional tort. McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997) (citing Estelle, 429 U.S. at 105-106).

In Estelle, the Supreme Court concluded:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. 97, 104-05 (citation omitted, footnotes omitted).

To state an Eighth Amendment claim, a plaintiff must allege a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs," Bienvenu v. Beauregard Parish Police Jury, 705 F.2d 1457, 1460 (5th Cir. 1983), and that a prison official knew of and disregarded "an excessive risk to inmate health or safety." Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999) (quoting Farmer v. Brennan, 511 U.S. 825, 837

13

(1994) "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Smith v. Brenoettsy, 158 F.3d 908, 912 (5th Cir. 1998) (quoting Farmer, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994) (citing Farmer, 511 U.S. at 842 & n.8).

In this case, Harris alleges that the repair of his broken jaw had failed before he even left the surgery clinic. He alleges that Dr. Hegmann and nurses Boyd and James ignored his urgent and repeated requests for immediate medical treatment for his broken jaw and his complaints of excruciating pain. Harris alleges facts demonstrating that all three defendants were made aware of, and disregarded, a substantial risk to Harris's health when they denied him treatment. Harris's factual allegations satisfy both the objective and subjective components of an Eighth Amendment claim; he states a claim upon which relief may be granted.

## V. CONCLUSION

We hold that the Louisiana prescription period was tolled during the pendency of Harris's administrative complaint. Harris timely filed this suit in federal district court within one year after he received final notice that his administrative complaint was dismissed. Harris's factual allegations state an Eighth

14

Amendment deliberate indifference claim against each of the defendants.  The dismissal of Harris's claims is REVERSED and this case is REMANDED the matter for further proceedings.

REVERSED and REMANDED.