REVISED MAY 1, 2009
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 30, 2009

Charles R. Fulbruge III
Clerk

No. 06-11233

ROBBIE LYNN NEWBY

Plaintiff-Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION; BILL PIERCE, Director of Chaplaincy TDCJ; E WILLIAMS, Warden; JOHN NINO, Chaplain

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:05-CV-128

Before BARKSDALE, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Robbie Lynn Newby, Texas prisoner # 1238216, appeals the dismissal as frivolous and for failure to state a claim of his pro se civil rights complaint, which raises First and Fourteenth Amendment claims under 42 U.S.C. § 1983, and claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Newby's § 1983 and RLUIPA claims arise from his desire to practice

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the Buddhist faith while incarcerated in the Texas Department of Criminal Justice-Institutions Division's (TDCJ-ID's) Roach Unit. For the following reasons, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. Factual and Procedural Background

Newby filed an amended complaint against Doug Dretke, the Director of the TDCJ-ID;[1] Bill Pierce, the Director of Chaplaincy at the TDCJ-ID; E. Williams, the Warden at the Roach Unit; and John Nino, the Chaplain at the Roach Unit, asserting violations of his First and Fourteenth Amendment rights and his rights under RLUIPA. Newby's amended complaint contains the following allegations: The defendants place impermissible burdens on Buddhist adherents at the Roach Unit by denying Buddhists the right to (1) have meetings under the same conditions as similarly situated religious groups; (2) have weekly worship time without an approved volunteer; (3) equal consideration concerning fair access to facilities for purposes of conducting religious activities; and (4) wear Buddhist "malas," or prayer beads, under the same conditions as Christians are allowed to wear crucifixes.

Newby alleges that outside volunteers are unavailable to hold Buddhist meetings for the Roach Unit and, as a Buddhist, it is essential for him to meet regularly with other Buddhists. He contends that outside volunteers have applied to lead Buddhist meetings for the inmates; however, they "encountered mysterious red-tape" and were never approved. Newby alleges that Buddhists are not afforded the same privileges as similarly-situated adherents of other religions, insofar as Christian activities are overseen by a state-sponsored leader, Chaplain Nino, and Muslims are allowed to meet three times a week without an outside volunteer. He further asserts that his Buddhist practices

---

[1] On June 1, 2006, Nathaniel Quarterman succeeded Doug Dretke, the previously named defendant, as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Quarterman is substituted as a party. FED. R. APP. P. 43(c)(2).

require that he have his prayer beads in contact with his body at all times; however, prison policy requires that he not wear them outside of his cell. Newby seeks declaratory and injunctive relief against the defendants in their official capacity and punitive damages, or any other damages available, against the defendants in their individual capacities.[2]

After Newby filed his initial complaint, which did not include a claim under RLUIPA, the district court ordered the State Attorney General to investigate Newby's claims and submit a report to the court pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978). The Martinez report related the following: Of the 1,335 inmates on the Roach Unit, there were approximately twenty Buddhists, and of this twenty, ten to fifteen regularly sought to be excused from work and other activities to observe state-designated Buddhist holidays. According to prison regulations, religious services must be conducted "by either a chaplain or an approved religious volunteer." "Because of security and safety concerns, [inmates] may not lead religious services. There is potential danger in sanctioning a system in which certain inmates hold persuasive power over others." Muslim inmates are exempt from the outside-volunteer policy pursuant to a consent decree in Brown v. Beto. There is "a total lack of approved Buddhist volunteers."[3] "If the Chaplaincy Department at the Roach Unit was to be contacted by a volunteer that wished to lead Buddhist education and worship, arrangements could be made to hold Buddhist religious ceremonies." "The lack of approved volunteers is the only reason that Buddhist group ceremonies cannot currently be held." Because of the lack of Buddhist volunteers, Chaplain Nino arranged for Newby "to have a private, tape assisted,

---

[2] We recently clarified the remedies available under RLUIPA and § 1983 in prisoner religious exercise cases. See Sossamon v. Lone Star State of Texas, 560 F.3d 316, 326-31, 335 (5th Cir. 2009).

[3] According to TDCJ-ID policy, an "approved volunteer" is defined as "[a] person who provides a service or who participates in volunteer activities on a regular basis and has been approved through the application process."

meditation session on a weekly basis." Additionally, Buddhists are permitted to have lay-in days, in-cell prayer and meditation, certain religious objects, and a Buddhist book section in the spiritual library in the chapel.

Newby responded to the Martinez report, raising several objections. Newby contested the number of Buddhist inmates on the Roach Unit, stating that there were twenty Buddhists in his building alone, and there were four other buildings in his unit.[4] He further disputed the report's statement that the prison library contained a Buddhist book section, stating that "there [was] no and never ha[d] been any Buddhist section in the chapel library." Newby also disputed the "accommodations" he was purportedly provided, stating that his weekly tape-assisted sessions were an academic pursuit, not devotional, for the purpose of his obtaining a diploma as a Dharma teacher. Finally, he challenged as discriminatory Chaplin Nino's overseeing Christian basketball, volleyball, band, and choir at the expense of his being able to supervise a Buddhist meeting, specifically referencing Nino's affidavit testimony that his duties of overseeing the needs of the entire inmate population prevented him from personally being able to lead a regular Buddhist ceremony.

After reviewing the record, the magistrate judge (MJ) recommended that Newby's complaint be dismissed as frivolous and for failure to state a claim. See 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c)(1). In regard to Newby's First Amendment Free Exercise claims, the MJ determined that (1) to the extent Newby was challenging the application of certain prison regulations, those regulations satisfied the requirements of Turner v. Safley, 482 U.S. 78 (1987), and were reasonably related to a legitimate penological interest, and (2) Newby failed to allege "that the defendants have denied or restricted his right to practice Buddhism in his cell, that he has been denied alternative means of exercising his religion, or that there is some obvious regulatory alternative that

---

[4] In his brief, Newby contends that he personally knows thirty-eight Buddhists at the Roach Unit, and "there could be a hundred Buddhists."

would fully accommodate his claimed rights without imposing a greater than de minimis cost to the prison's valid penological goals of security, discipline, and operating within space, budget and time restraints, all while executing a neutral policy."

As for Newby's Fourteenth Amendment claims, he claimed that Muslim services were supervised by a single guard and that Buddhist services should be allowed to take place under similar circumstances. The MJ stated that an exception is made as to Muslims pursuant to a consent decree in Brown v. Beto, and Newby had not shown how the consent decree conferred any rights to him or "how an additional exception for Buddhists would be only a de minimis cost to the valid penological interests underlying the regulations." The MJ further determined that Newby failed to show "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." With regard to his prayer beads, the MJ noted that prison policy allowed inmates to possess rosaries; however, it mandated that they not be worn as necklaces. The MJ added that since rosaries were a species of prayer beads, the requirement that they all be dyed black appeared to be a neutral regulation.

Lastly, the MJ recommended the dismissal of Newby's RLUIPA claim. Newby claimed that he was prevented from worshiping with other Buddhists unless an outside volunteer was available to conduct the meeting. The MJ determined that "[t]he requirement of an outside volunteer, which is a uniform requirement for congregate religious services except Muslims, did not place a substantial burden on [Newby's] religious exercise."

Newby filed objections to the MJ's recommendations, which the district court denied. The district court adopted the MJ's report and dismissed Newby's complaint as frivolous and for failure to state a claim. Newby then filed a motion to alter the district court's judgment, which the district court denied. Newby filed a timely notice of appeal and a motion to proceed in forma pauperis

(IFP) on appeal.  The district court granted Newby permission to proceed IFP on appeal.

## II. Analysis

### A.    Standard of Review

An IFP complaint may be dismissed as frivolous if it has no arguable basis in law or fact.  Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); 28 U.S.C. § 1915(e)(2)(B)(i).   The dismissal of a complaint as frivolous pursuant to § 1915(e)(2)(B)(i) is reviewed for abuse of discretion.  See Harper v. Showers, 174 F.3d 716, 718 & n.3 (5th Cir. 1999).   However, dismissals for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A, and 42 U.S.C. § 1997e(c)(1) are reviewed de novo, using the same standard of review applicable to Fed. R. Civ. P. 12(b)(6) dismissals.  Geiger v. Jowers, 404 F.3d 371, 373 (5th Cir. 2005); Harris v. Hegmann, 198 F.3d 153, 156 (5th Cir. 1999).  Because the district court dismissed Newby's claims pursuant to both subsections, review should be de novo.  See Geiger, 404 F.3d at 373 (reviewing dismissal of complaint de novo where both standards of review were applicable).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).   "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 555-56 (internal quotation marks, citations, and footnote omitted).

### B.    RLUIPA

#### 1.    Legal Standard

Newby argues that the complete absence of Buddhist meetings, the ban on carrying malas or wearing them under his clothes, and the requirement that his malas be dyed black all place a substantial burden on his exercise of religion because both communal meetings and wearing malas are essential to the practice of Buddhism.

Under RLUIPA,

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "The term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." Id. § 2000cc-5(7)(A); see Adkins v. Kaspar, 393 F.3d 559, 567-68 & nn.33-34 (5th Cir. 2004). The plaintiff bears the burden to show that the challenged government action imposes a "'substantial burden' on his religious exercise." Adkins, 393 F.3d at 567. "[A] government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate[s] his religious beliefs." Id. at 570. "[T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs." Id. In applying this test, courts conduct a "case by case, fact-specific inquiry." Id. at 571.

### 2. Outside Volunteer Claim

#### a. Substantial Burden

Newby argues that the district court erred in dismissing his RLUIPA claim because the TDCJ-ID's outside-volunteer policy imposes a substantial burden on his right to practice Buddhism. In Mayfield v. Texas Dep't of Criminal Justice, 529 F.3d 599, 614-15 (5th Cir. 2008), we held that the

availability of an outside volunteer only once every eighteen months provided a reasonable basis for a factfinder to conclude that the application of the TDCJ-ID's outside-volunteer policy imposed a substantial burden on Mayfield's right to exercise his religion in violation of RLUIPA. In making this determination, we noted the lack of evidence that a volunteer would become available in the future to reduce the burden on Mayfield's ability to worship. Id. Newby has alleged that the TDCJ-ID's outside-volunteer policy has precluded members of the Buddhist faith on the Roach Unit from meeting, and the Martinez report corroborates that there is a total lack of approved Buddhist volunteers to conduct meetings. These facts suggest that the burden on Newby is greater than that of the inmate in Mayfield.[5]

In Sossamon v. Lone Star State of Texas, 560 F.3d 316 (5th Cir. 2009), we held that TDCJ-ID's complete ban on worship in the Robertson Unit's chapel provided a reasonable basis for a factfinder to conclude that the application of the TDCJ-ID's chapel-use policy imposed a substantial burden on Sossamon's right to exercise his religion in violation of RLUIPA. Id. at 332-34. Sossamon claimed that worship before an altar and cross in a chapel with Christian symbols and furnishings was important to his free exercise. Id. at 321. Similarly, Newby claims that it is essential for him to meet with other Buddhists and participate in communal services. Although Chaplain Nino's affidavit states that "Buddhism does not rely heavily on services requiring worshipers to congregate," his understanding "is irrelevant except to the extent that it might call into question [Newby's] good faith, which it does not purport to do." Id. at 332. Chaplain Nino states that he provides alternative accommodations for the

---

[5] In Adkins, we held that TDCJ-ID's outside-volunteer policy did not substantially burden Adkins's free exercise, see 393 F.3d at 571, but in that case, an outside volunteer was available to oversee Sabbath observances for members of the Yahweh Evangelical Assembly (YEA) once a month. See id. at 562; see also Sossamon, 560 F.3d at 334 ("It is primarily cases in which the small number of available lay volunteers makes religious services less frequent than an adherent would like (but still available on a somewhat regular basis) that a neutrally applied policy does not substantially burden religious exercise.").

Buddhist prisoners, but the existence and efficacy of these accommodations is hotly contested. See Mayfield, 529 F.3d at 614-15 ("An inability to exercise other means of Odinist worship increases the relative burden imposed by the TDCJ's policy preventing group meetings in the absence of an outside volunteer."). For purposes of the "substantial burden" prong of the RLUIPA inquiry, these alternative accommodations do not alter "the fact that the rituals which [Newby] claims are important to him—without apparent contradiction—are now completely forbidden by Texas." Sossamon, 560 F.3d at 333 (emphasis in original). Based on Mayfield and Sossamon, there is a reasonable basis for a factfinder to conclude that the outside-volunteer policy creates a substantial burden on Newby's free exercise.

### b. Least Restrictive Means

Having determined that there is a reasonable basis for a factfinder to conclude that the outside-volunteer policy substantially burdens Newby's free exercise, we must still evaluate whether that policy is the least restrictive means of furthering a compelling governmental interest. See 42 U.S.C. § 2000cc-1(a). If it is, then Newby's RLUIPA claim must fail. Chaplain Nino opines that an outside volunteer is required for security and safety concerns. If inmates are allowed to lead religious services, they might exert undue influence over other adherents and might not have adequate knowledge of the religious tenets of a particular faith. "Texas obviously has compelling governmental interests in the security and reasonably economical operation of its prisons," see Sossamon, 560 F.3d at 334, but there is a reasonable basis for a factfinder to conclude that Texas has not furthered those interests through the least restrictive means possible.

If a policy of general applicability imposes a substantial burden on an inmate's free exercise, we evaluate whether the policy is the "least restrictive means of furthering [a] compelling governmental interest" by examining the particular facts of the case. The outside-volunteer policy provides that religious

services in the Roach Unit need to be conducted by either a chaplain or an approved religious volunteer. However, there are no approved religious volunteers to conduct Buddhist ceremonies, and Chaplain Nino refuses to conduct Buddhist ceremonies because he is unfamiliar with Buddhist religious practices and is occupied by his other chaplaincy obligations. At a result, Buddhists are completely unable to engage in communal worship.

At this stage of the litigation, we cannot see "why many of the security concerns voiced by Texas cannot be met by using less restrictive means, even taking into account cost." See Sossamon, 560 F.3d at 335. For instance, Chaplain Nino or other prison staff could supervise, rather than conduct, Buddhist ceremonies, thus ensuring that no inmate exerts undue influence over his peers. See id. (identifying alternative arrangements that would address the legitimate security concerns raised by the prison while imposing a lesser burden on the inmate's free exercise). Newby alleges that "numerous Buddhist clergy [have] offered remote supervision, audio/video tapes, and consultation for Chaplain Nino," who through exercise of his supervisory authority could ensure that any communal worship is consistent with the tenets of the Buddhist faith. While Buddhists might not be entitled to the benefits of the consent decree in Brown v. Beto, the fact that Muslims regularly engage in communal worship without an approved religious volunteer is some evidence that the security and safety concerns identified by Texas can be addressed through less restrictive alternatives. The feasability of these alternatives and others can be explored on remand.

Newby also alleges that Chaplain Nino is targeting Buddhists through the disparate application of TDCJ-ID's outside-volunteer policy. According to Newby, (1) Muslims may hold services without an approved religious volunteer, but Buddhists may not; and (2) Chaplain Nino conducts or supervises a variety of Christian activities, but not Buddhist activities. Newby alleges that TDCJ-ID does not allow him to meet with other Buddhists under the same conditions as

these "god-based groups."[6] These allegations of disparate application might provide a reasonable basis for a factfinder to conclude that the outside-volunteer policy is not the least restrictive means of furthering a compelling governmental interest. See id. at 334 (noting that "the chapel can be and is safely used for other kinds of prisoner gatherings, such as weekend-long marriage training sessions (with outside visitors), sex education, and parties for GED graduates."); Mayfield, 529 F.3d at 615 ("The unresolved factual issues regarding the TDCJ's neutral application of the policy call into question whether the TDCJ's application of its policy to the Odinists is narrowly tailored to the TDCJ's asserted interests."). Consequently, we vacate the dismissal of Newby's RLUIPA claim as to the outside-volunteer policy.

### 3. Prayer Beads Claim

The district court did not evaluate under RLUIPA whether the TDCJ-ID's restrictions on wearing prayer beads imposed a substantial burden on Newby's religious practice; it addressed that issue with regard only to his First and Fourteenth Amendment claims. "[T]he RLUIPA standard poses a far greater challenge than does Turner to prison regulations that impinge on inmates' free exercise of religion." Freeman v. Tex. Dep't of Criminal Justice, 369 F.3d 854, 857 n.1 (5th Cir. 2004). Because the district court's evaluation of the prayer beads issue under the First and Fourteenth Amendments is not dispositive for purposes of determining whether Newby has stated a RLUIPA claim, it should address that issue on remand.

### C. Constitutional Claims

#### 1. First Amendment Claims

##### a. Establishment Clause

---

[6] Newby identifies these structured religious activities as "Christian band practice, choir practice, Catholic band practice, praise and worship team practice, Catholic choir, Spanish choir, Spanish bible study, musician practice, Taleem services, Jumah, Muslim coordinators (and even basketball and volleyball tournaments)."

With regard to his First Amendment issues, Newby first argues that the district court failed to address his Establishment Clause claim. The record discloses, however, that the district court did address that claim, and Newby has not assigned error to or briefed the specific reason for its dismissal. He has therefore forfeited its review. See Brinkmann v. Dallas County Deputy Sheriff Abner, 813 F.2d 744, 748 (5th Cir. 1987). We affirm the dismissal of Newby's Establishment Clause claim.

b.      Free Exercise Clause

Newby also raises a First Amendment Free Exercise claim, and, on appeal, argues that the TDCJ-ID failed to provide him with alternative means of exercising his religious rights in spite of the outside-volunteer policy. In Turner, 482 U.S. at 90, the Supreme Court stated that one of several factors relevant to determining the reasonableness of prison policy or actions by prison officials is whether there are alternative means of exercising the rights that remain open to the inmates. In assessing the availability of alternative means, "the pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith." Adkins, 393 F.3d at 564 (internal quotation marks and citation omitted).

Newby has alleged that Buddhist inmates on the Roach Unit have been totally unable to congregate due to a lack of outside volunteers and have no access to religious materials from the unit's library. As such, the facts of his case differ from previous cases in which we have held that the prisoner had access to alternative means of worship. See Mayfield, 529 F.3d at 609-10; Adkins, 393 F.3d at 564. Newby has alleged facts that could lead a factfinder to conclude that the TDCJ-ID has failed to provide him with alternative means of practicing his Buddhist faith and, therefore, that the outside-volunteer policy violates his First Amendment rights. The dismissal of his First Amendment Free Exercise claim is therefore also vacated.

2.    Fourteenth Amendment Claim

Finally, Newby argues that the TDCJ-ID's outside-volunteer policy violates the Fourteenth Amendment's Equal Protection Clause.  Insofar as Newby bases his equal protection claim on allegations that Muslim inmates are unfairly exempt from the outside-volunteer policy by virtue of Brown v. Beto, we have rejected a similar argument in Adkins.  See 393 F.3d at 566.  Newby has therefore failed to state a claim on that basis.  Nevertheless, Newby disputes the number of Buddhists on the Roach Unit as represented in the Martinez report and argues that Buddhists are denied equal consideration concerning fair access to facilities to conduct religious activities, despite having numerous adherents on the unit.  To the extent that the district court found that any disparate treatment of Buddhists could be overlooked because other religions had far more adherents on the Roach Unit, the record contains no evidence supporting that assumption.  Cf. Mayfield, 529 F.3d at 609 (refusing to overlook the existence of material issues of fact regarding whether Odinists and other religious groups were similarly situated based on only unsupported assumptions about the relative size of Odinists compared to other faith groups on the unit).  A Martinez report may not be used to resolve material disputed fact findings when they are in conflict with the pleadings or affidavits.  Shabazz v. Askins, 980 F.2d 1333, 1334-35 (10th Cir. 1992).  Consequently, the dismissal of Newby's equal protection claim is also vacated.

AFFIRMED IN PART; VACATED IN PART; REMANDED.